STATE OF NORTH CAROLINA v. JAMES A. BUSH

No. 95

(Filed 29 January 1976)

1. **Constitutional Law § 36; Homicide § 31— first degree murder — death penalty — constitutionality**

   Imposition of the death penalty upon a conviction of first degree murder was not unconstitutional, and defendant was not denied due process because the district attorney had the absolute discretion to charge and prosecute for a capital offense or to bring the accused to trial upon a lesser included offense.

2. **Criminal Law § 169— evidence admitted over objection — subsequent evidence admitted without objection — no prejudice**

   The trial court in a first degree murder prosecution did not err in allowing deceased's wife to testify that her husband usually carried a little money in his pocket, since other evidence which was admitted without objection was sufficient to support an inference that a robbery had been committed.

3. **Criminal Law §§ 71, 85, 169— officer's testimony — shorthand statement of fact — character evidence — exclusion not prejudicial**

   Testimony by a police officer which would have shown that the officer's investigation tended to corroborate portions of defendant's statement to the officer was a shorthand statement of fact and should not have been rejected on the ground that it invaded the province of the jury; however, the exclusion of such testimony was not prejudicial since defendant failed to present properly this character evidence and since the officer had already testified to facts which tended to support the conclusion defendant sought to elicit.

4. **Homicide § 21— death by stabbing — unlawfulness and malice — sufficiency of evidence**

   Evidence in a first degree murder prosecution was sufficient to permit the jury to find that the killing was unlawful and was done with malice where such evidence tended to show that defendant killed deceased by the intentional use of a deadly weapon, a knife.

5. **Homicide § 21— first degree murder — premeditation and deliberation — sufficiency of evidence**

   Evidence in a first degree murder prosecution was sufficient to permit the jury to find that after premeditation and deliberation defendant formed a fixed purpose to kill and did kill his victim where such evidence tended to show that defendant stole a car and thereafter drove it into a ditch in the vicinity of the trailer home occupied by deceased and his wife, defendant then went to the trailer home where deceased allowed him to use the phone and later gave him a glass of water, defendant attacked deceased with a knife upon little or no provocation, defendant then robbed deceased's body, ransacked the dwelling, left the body of deceased in his own blood, and thereafter returned to rob and tie up the wife of the deceased.

6. **Homicide § 21— murder in perpetration of robbery — sufficiency of evidence**

   Evidence was sufficient to permit the jury to find that defendant killed his victim while in the perpetration of a robbery, and it was not error for the trial court to submit the charge of murder in the first degree on the "felony-murder" theory.

7. **Criminal Law § 114— jury charge on defendant's contentions — no expression of opinion**

   The trial court did not express an opinion in its jury charge by stating that defendant contended he committed no unlawful homicide and that defendant contended he should be acquitted of manslaughter on the grounds of self-defense, since the trial court's statement was

State v. Bush

consistent with defendant's own testimony; moreover, the challenged statement was favorable to defendant since it presented to the jury a possible complete defense.

Chief Justice SHARP concurs in the result.

APPEAL by defendant, James A. Bush, pursuant to G.S. 7A-27(a) from *Fountain, J.,* 19 May 1975 Session ONSLOW Superior Court.

Defendant was tried upon a bill of indictment which charged that "James A. Bush late of the County of Onslow on the 18th day of November 1974, with force and arms, at and in the said County, feloniously, wilfully, and of his malice aforethought, did kill and murder Kirby W. Marshburn . . . . "

The State's evidence tended to show the following:

Eva A. Marshburn, wife of the deceased, testified that on 18 November 1974, after completing her work in Jacksonville, North Carolina, at about 9:10 p.m. she drove to her house trailer located near Highway 258 about eleven miles from Jacksonville. Upon entering the hall of her trailer she observed that two bedrooms had been ransacked. The contents of dresser drawers in each bedroom had been emptied on the bed and personal items were scattered about the rooms. She had left the rooms in an orderly condition except for one unmade bed. Mrs. Marshburn proceeded to the living room and there she observed her husband in the kitchen lying facedown in a pool of blood. A blood-stained knife with a bent blade lay on the floor near her husband's body. She recognized the knife as being one of her set of steak knives. Her husband's wallet was also lying between his body and a kitchen cabinet. Upon turning to reach for the telephone, she saw defendant who said, "You're next." Defendant told her that he would have to kill her because she had seen his face and he knew that she would turn him in. He then demanded money and upon his agreement to leave, she emptied her pocketbook which contained something over three dollars and gave it to him. Defendant then cut the telephone line and tied the witness to a chair with some drapery cord taken from the curtains. Mrs. Marshburn asked defendant why he killed her husband and he replied, "He wouldn't do anything I asked him to do, so I had to kill him." After telling the witness that he was going to take her car, defendant left the trailer but returned in a few minutes and inquired about a gun and some ammunition. The witness directed him to the gun and

defendant then left in the Marshburn car. Mrs. Marshburn was able to free herself and find help.

Robert E. Lee of the Onslow Sheriff's Department testified that he went to the Marshburn home on the night of 18 November 1974 where he observed the body of Mr. Marshburn lying on the kitchen floor in a pool of blood. He found a knife and a wallet near the body. The officer described the premises as having been "ramshackled."

Gwendolyn Cruz testified that she drove her 1974 Grand Prix automobile to work at the Area I Club on the afternoon of 18 November. She placed her keys on the bar behind which she worked. The witness observed defendant at the bar at about 4:30 p.m. and saw him leave at about 6:00 p.m. She later discovered that her automobile keys were missing and that her automobile had been stolen.

Johnnie Burris testified that on the night of 18 November 1974, at about 8:15 p.m., he saw defendant standing beside a Grand Prix automobile which was in a ditch on the side of Highway 258, approximately one mile from Kirby Marshburn's house. He offered to give defendant some assistance but defendant told him that he didn't want a wrecker and that he would get the car out later. Burris stated that while he was there another man stopped and offered defendant a ride to Highway 17 but defendant declined this offer. There was another dwelling immediately across the road. It was later ascertained by police officers that the Grand Prix automobile belonged to Mr. and Mrs. Thurman Cruz.

Michael Papenfuse testified that on 18 November 1974, between 9:40 and 9:45 p.m., he saw defendant go into the Bang Bang Club. A short time thereafter he observed defendant leave in an automobile which he thought was a Ford.

Deputy Sheriff J. L. Jones of the Onslow Sheriff's Department, at about 11:30 on the same night, found a 1970 Ford, later identified as the Marshburn's car, approximately a quarter mile from the main gate of Camp Lejeune.

On the night of 19 November 1974 Officer Jarman of the Onslow Sheriff's Department located defendant at Camp Lejeune. He advised defendant of his constitutional rights and questioned him concerning the events of the previous night. Defendant stated that he had taken the Cruz automobile and

State v. Bush

driven it into a ditch and he thereafter walked to the Marshburn trailer home where Mr. Marshburn allowed him to use the telephone and also gave him a glass of water. Defendant said that while they were in the kitchen, Mr. Marshburn, for no apparent reason, pushed him into the kitchen counter and that he grabbed a knife from a counter and stabbed Mr. Marshburn several times. Mr. Marshburn fell to the floor and defendant was attempting to drive away in the Marshburn truck when Mrs. Marshburn arrived. He followed Mrs. Marshburn into the trailer, took some money from her and tied her into a chair. He left in Mrs. Marshburn's automobile. Defendant signed a statement after it was reduced to writing.

The State offered into evidence several articles of defendant's blood-stained clothing. The blood stains were found to be of the same type as that of deceased. Defendant's boots were introduced into evidence and the tread on the boots was similar to the bloody boot prints found on the floor of the Marshburn trailer.

Dr. Walter Gable, an expert in pathology, testified that he examined Mr. Marshburn's body on the morning of 19 November 1974. His examination revealed lacerations on the neck and face and four stab wounds in the front of the victim's body. He testified that in his opinion Mr. Marshburn died as a result of a stab wound which penetrated the sternum and terminated in the victim's heart. He further stated that the steak knife found near Mr. Marshburn's body could have been the instrument which inflicted the fatal wound.

Defendant testifying in his own behalf stated that he went to the Area I Service Club at about 4:30 p.m. on 18 November where he drank beer until 7:15 p.m. He then took the Cruz automobile and was driving toward Richlands on Highway 258 when he lost control of the car and drove it into a ditch. He later walked to the Marshburn trailer home where he asked Mr. Marshburn if he could use the telephone. He had some conversation with Mr. Marshburn during which Mr. Marshburn said "something about a colored boy down the road owned a wrecker." Defendant then asked Mr. Marshburn what color the boy was. At this point he said that Mr. Marshburn pushed him toward the kitchen counter and told him to leave. He picked up a knife from the counter and stabbed Mr. Marshburn a number of times. Defendant said he had no intention of stealing anything at the time he stabbed Mr. Marshburn and that he

immediately tried to leave the premises in the Marshburn truck. There were no keys in the truck and he returned to the trailer and ransacked the bedroom in an unsuccessful search for the keys. He then searched the body and found the keys in Mr. Marshburn's pants pocket. As he prepared to leave in the truck, Mrs. Marshburn arrived and he followed her into the house, took money from her, cut the telephone line, and tied Mrs. Marshburn into a chair. He also took a rifle and some ammunition before driving away in the Marshburn automobile. On cross-examination defendant testified that two people did offer him assistance at the place where he had driven the Cruz automobile into a ditch. He also admitted that he passed a pay telephone booth on the way to the Marshburn trailer and he had some change in his pocket at that time. He explained that he did not use the telephone because it was too near the stolen automobile and he was afraid that he would be accused of burglary because of its proximity to a store. He further said that he thought there was another dwelling between the Marshburn residence and the stolen automobile.

The jury returned a verdict of guilty of murder in the first degree. Defendant appealed from a judgment imposing the death sentence.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Lester V. Chalmers, Jr., and Assistant Attorney General William B. Ray, for the State.*

*William J. Morgan and Grady Mercer, Jr., for the defendant.*

BRANCH, Justice.

[1]   Defendant's first assignment of error is as follows:

I. WAS THE ENTRY OF THE JUDGMENT AND SENTENCE OF DEATH UNCONSTITUTIONAL IN VIOLATION OF THE RIGHTS GUARANTEED THE DEFENDANT UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES?

The questions presented by this assignment of error were considered and answered by this Court in the case of *State v. Woodson,* 287 N.C. 578, 215 S.E. 2d 607. There Chief Justice Sharp, in part, wrote:

G.S. 14-17, as rewritten on 8 April 1974 by the enactment of N. C. Sess. Laws, ch. 1201, § 1 provides that mur-

der in the first degree "shall be punished with death." Defendants contend, however, that capital punishment "under the laws of North Carolina [would] violate U. S. Const. amend. VIII and amend. XIV, § 1, and N. C. Const. art. 1, §§ 19, 27." In the last three years this Court has several times rejected these contentions. They have been thoroughly considered and further discussion would be merely repetitious. *See State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19 (1973); *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974); *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974); *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974); *State v. Avery*, 286 N.C. 459, 212 S.E. 2d 142 (1975).

Defendant's specific argument that he was denied due process because the District Attorney had the absolute discretion to charge and prosecute for a capital offense or to bring an accused to trial upon a lesser included offense has also been considered and rejected by this Court in a number of cases. See *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763; *State v. Woods*, 286 N.C. 612, 213 S.E. 2d 214; *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721.

[2] Defendant next contends that the trial judge erred by allowing the witness, Eva A. Marshburn, to respond to a question of the District Attorney about a matter which was not within her knowledge.

The District Attorney asked Mrs. Marshburn if her husband usually carried money in his pocket and she replied, "Usually not a whole lot, but just a little." Defendant takes the position that this evidence prejudiced defendant "by allowing speculation of a robbery to creep into evidence."

A murder committed in the perpetration *or attempted perpetration* of robbery is murder in the first degree. G.S. 14-17; *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165; *State v. Biggs*, 224 N.C. 722, 32 S.E. 2d 352.

We must concede that the evidence was of little relevance since it is not necessary for property to be actually taken in order to support a conviction of murder in the first degree when the homicide occurs during an attempted robbery. However, in light of the evidence admitted without objection to the effect

that the witness found her husband's body lying in a pool of blood beside a knife and his wallet and that the dwelling had been "ransacked" we can find little prejudice in the admission of this evidence. The evidence admitted without objection was sufficient to support an inference that a robbery had been committed. This assignment of error is overruled.

[3]  Defendant assigns as error Judge Fountain's ruling sustaining the State's objection to Deputy Woodward's testimony which would have shown that the officer's investigation tended to corroborate portions of defendant's statement to the officer.

The State takes the position that the proffered evidence was conclusory in nature and invaded the province of the jury.

Officer Woodward testified as to a statement made to him by defendant. The officer's testimony, in essence, corroborated the testimony later given by defendant. On cross-examination, Officer Woodward, in part, stated:

> The defendant proved to be very cooperative . . . . At the barracks he showed us where he had placed the car keys and he also voluntarily showed us where he had put the clothes that he had worn. He gave us permission to go in his locker and cooperated totally with us after his initial denial.

> We checked out his remarks concerning going to a bar and that resulted in Mr. Papenfuse being located. The little details about getting cigarettes checked out to be truthful.

This assignment of error is based upon the following question and ruling:

> Q. Mr. Woodward, so far as you have been able to personally check in attempt to verify things that were told you by the defendant, have you found these things to be accurate and truthful insofar as you have been able to ascertain?

> MR. ANDREWS: Objection.

> COURT: Sustained.

Had the officer been permitted to answer he would have stated:

> A. Yes, sir, everything that he has told me that took place we have confirmed except the car keys to Mrs. Marshburn's vehicle. We were unable to find those. . . .

State v. Bush

Our research reveals some cases which tend to support the State's position.

In *State v. Summerlin*, 232 N.C. 333, 60 S.E. 2d 322, the defendants were charged with a criminal conspiracy to commit robbery and with aiding and abetting in robbery. Three of the defendants entered pleas of guilty to the conspiracy charge and another defendant entered a plea of guilty to the charge of aiding and abetting. Two of the defendants, Stroud and Summerlin, entered pleas of not guilty to both charges. The jury returned verdicts of guilty as charged as to Stroud and Summerlin. Defendant Summerlin appealed. One of the co-conspirators testified for the State. A police officer, without objection, also gave inculpatory testimony against Summerlin. Summerlin admitted that he received some of the stolen property and tried to dispose of it. Thereafter the Sheriff of Wayne County testified concerning the arrest of the defendant Chappell. He stated that Chappell then told him about his part in the robbery. The Solicitor then inquired, "What did he tell you?" The Sheriff, over objection, replied, "Just what you have just heard, practically verbatim." In deciding this assignment of error, the Court stated:

> The defendant contends the answer was a conclusion on the part of the witness, and violated the general hearsay rule, and invaded the province of the jury, citing *S. v. McLaughlin*, 126 N.C. 1080, 35 S.E. 1037, and Stansbury, N. C. Evidence, Sec. 126.

> If the solicitor had pursued his inquiry no further as to what Chappell told him, this exception would be well taken. However, the answer of the witness was not accepted and he was requested by the solicitor to repeat as nearly as he could the conversation between him and Chappell. The Sheriff then testified in detail, without objection, as to what Chappell had told him. The exception will not be upheld.

The defendant was convicted of rape in the case of *State v. McLaughlin*, 126 N.C. 1080, 35 S.E. 1037. There defense counsel examined the committing Justice of Peace who recited the evidence given by prosecutrix at the preliminary hearing. On cross-examination, the solicitor asked the witness, "if the testimony of Harriet McMillan, the prosecutrix in this case was substantially the same as it was on the hearing before him in the

justice's court." Over objection the witness said "she testified to about the same on both trials." Holding the admission of this evidence to be error, this Court stated:

> . . . The general rule of law is that the jury (or the judge, as the case may be) are the triers of matters of dispute, and form their conclusions from the facts before them, and not upon the opinions of others on the subject. So that the facts and not opinions are to be listened to by the jury.

*    *    *

> Whether the two statements by the prosecutrix were substantially the same, is a fact to be determined by the jury, and not the witness. That would in effect make the witness the jury as to that fact. It was competent for the witness to state what the prosecutrix said on the former trial, and the jury would then determine whether the two statements were the same or not.

The rule that opinion evidence is not admissible because it invades the province of the jury has been criticized in several treatises on evidence because: (1) The reasons justifying its use are unconvincing, (2) its meaning is obscure, and (3) the many exceptions to the rule severely restrict its application. Stansbury's North Carolina Evidence (Brandis Rev.) § 126. See also Professor Morgan's review of King & Pillinger, Opinion Evidence in Illinois, in 29 Va. L. Rev. 970 (1943). Some of the exceptions to the rule are considered in 1 Stansbury's North Carolina Evidence (Brandis Rev.) § 125:

> Opinion evidence is always admissible when the facts on which the opinion or conclusion is based cannot be so described that the jury will understand them sufficiently to be able to draw their own inferences. Even when it might be *possible* to describe the facts in detail, it may still be *impracticable* to do so because of the limitations of customary speech, or the relative unimportance of the subject testified about, or the difficulty of analyzing the thought processes by which the witness reaches his conclusion, or *because the inference drawn is such a natural and well understood one that it would be a waste of time for him to elaborate the facts,* or perhaps for some other reason.

> It is neither possible nor desirable to lay down a hard and fast rule to cover the infinite variety of situations that may arise, but the admissibility of opinion evidence

under the circumstances suggested above is thoroughly established. The idea is variously expressed by saying that "instantaneous conclusions of the mind," or "natural and instinctive inferences," *or the "evidence of common observers testifying to the results of their observation" are admissible,* or by characterizing the witness's *statement as a "shorthand statement of the fact"* or as "the statement of a physical fact rather than the expression of a theoretical opinion." [Emphasis ours.]

It would have been a waste of time for the officer to testify as to how each fact in defendant's statement was confirmed by his independent investigation. The answer would have only summarized the results of the witness's observation of physical facts. In our opinion the challenged answer was a shorthand statement of fact and should not have been rejected on the ground that it invaded the province of the jury.

Defendant concedes in his brief that the purpose of the proffered evidence was to bolster defendant's credibility by showing this specific instance of truthfulness. Thus the trial judge's ruling might well have been based on defendant's failure to properly present this character evidence.

In North Carolina the rule is that when a character witness is called he must first state that he knows the general reputation of the party about whom he proposes to testify. If he does not know the general reputation of the person in question, the witness may not properly testify as to the reputation and character of that person. If he states that he is familiar with the party's general reputation he may state whether it is good or bad and then on his own volition he may state whether it is good for certain virtues or bad for certain vices. *State v. Hicks,* 200 N.C. 539, 157 S.E. 851; *State v. Nance,* 195 N.C. 47, 141 S.E. 468 (dictum). It is improper, however, to allow a witness to testify about specific acts without first establishing that the witness knows the party's general reputation. *State v. Ellis,* 243 N.C. 142, 90 S.E. 2d 225; *State v. Coley,* 114 N.C. 879, 19 S.E. 705.

Here defendant did not show that the witness knew defendant's general reputation but merely sought to prove his own character by attempting to show a single specific act of truthfulness. Even had the trial judge ruled incorrectly, no substantial prejudice to defendant arose from the rejection of this

evidence since the witness had already testified to facts which tended to support the conclusion defendant sought to elicit. In fact, all of the State's evidence tended to show that the portions of defendant's statement which were subject to confirmation by independent investigation were true.

For the reasons stated, this assignment of error is overruled.

By his assignments of error 4, 6, 7, 8 and 9, defendant presents the question of whether the trial judge erred in refusing to grant his motion for judgment as of nonsuit on the charge of first-degree murder.

Defendant was charged with murder in the first degree by a bill of indictment drawn under the provisions of G.S. 15-144. Such indictment will support a verdict of murder in the first degree if the jury finds beyond a reasonable doubt that an accused killed with malice and after premeditation and deliberation or in the perpetration or attempted perpetration of any arson, rape, robbery, burglary or other felony the commission of which creates any substantial foreseeable human risk and actually results in loss of life. G.S. 14-17; *State v. Thompson,* 280 N.C. 202, 185 S.E. 2d 666; *State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435.

We first consider whether the State presented such substantial evidence as would permit the jury to find that defendant unlawfully, with malice and after premeditation and deliberation killed deceased.

[4] The intentional use of a deadly weapon proximately causing death gives rise to presumptions that (1) the killing was unlawful, and (2) the killing was done with malice. This is second-degree murder. *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575; *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558; *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393; *State v. Gordon,* 241 N.C. 356, 85 S.E. 2d 322. Here all the evidence shows that defendant killed deceased by the intentional use of a deadly weapon and the only question before us at this point is whether the killing was done after premeditation and deliberation.

Premeditation means thought beforehand for some length of time.

Deliberation means that the action was done in a cool state of blood. Deliberation does not require reflection or brooding

for an apparent length of time, but rather an intention to kill executed by defendant in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose and not under the influence of a violent passion, suddenly aroused by just cause or legal provocation. *State v. Fountain,* 282 N.C. 58, 191 S.E. 2d 674; *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65, cert. denied 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133; *State v. Benson,* 183 N.C. 795, 111 S.E. 869.

Premeditation and deliberation must usually be inferred from various circumstances. Among these circumstances are: (1) want of provocation on the part of the deceased, (2) the conduct of an accused before and after the killing and (3) that the killing was done in a vicious and brutal manner. *State v. Fountain, supra; State v. Duboise, supra; State v. Reams, supra; State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769.

Upon motion for judgment as of nonsuit in a criminal prosecution, the questions before the Court are whether there is substantial evidence of each essential element of the crime charged, and whether the accused was the perpetrator of the charged offense. In determining these questions, the evidence before the Court must be considered in the light most favorable to the State and the State is entitled to the benefit of every reasonable inference which may be drawn from the evidence. Any contradictions and discrepancies in the evidence are resolved in favor of the State for the purpose of the motion. Incompetent evidence admitted is considered as if it were competent. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755, cert. denied 414 U.S. 874, 38 L.Ed. 2d 114, 94 S.Ct. 157; *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Faust, supra.*

[5] The evidence in this case, when considered according to the well-established rules above set forth, discloses that on the night of 18 November 1974 defendant, a twenty-year-old Marine, stole an automobile and thereafter drove it into a ditch in the vicinity of the trailer home occupied by deceased and his wife. Defendant then went to the home then occupied by sixty-five-year-old Kirby W. Marshburn who allowed defendant to use his telephone and later gave defendant a glass of water. Thereafter because deceased "wouldn't do what he was told to do" defendant attacked him with a knife inflicting lacerations in the eye, two separate open wounds in the neck, four stab wounds in the front of the body and the fatal stab which passed

through the sternum and pierced deceased's heart. Defendant then searched the body of Mr. Marshburn, removed his wallet and the keys for the Marshburn truck, ransacked the dwelling and left deceased lying in a pool of his own blood. As defendant prepared to leave in the Marshburn truck, he observed Mrs. Marshburn as she entered the dwelling. He returned, robbed her, took the keys to the automobile, took a gun and some ammunition, tied Mrs. Marshburn up and departed in the Marshburn automobile.

The actions of defendant in obtaining entrance into the Marshburn home in the nighttime and there savagely and brutally attacking his benefactor with a knife with little or no provocation were circumstances which permitted an inference of premeditation and deliberation. Defendant's conduct after the killing in robbing deceased's body, ransacking the dwelling and leaving the body of deceased lying in his own blood and thereafter returning to rob and tie up the wife of the deceased are also circumstances which permit the inference that the killing was done with premeditation and deliberation.

We hold that there was sufficient substantial evidence to permit, but not require, the jury to find that after premeditation and deliberation defendant formed a fixed purpose to kill and did kill Kirby W. Marshburn.

[6]    Defendant also contends that the trial judge erred by submitting the charge of murder in the first degree on the "felony-murder" theory.

G.S. 14-17, in part, provides:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, *or* which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary *or other felony*, shall be deemed to be murder in the first degree . . . .

The case of *State v. Thompson, supra*, clearly states principles pertinent to decision of the question before us. There Chief Justice Bobbitt, speaking for the Court, stated:

. . . A murder committed in the perpetration or attempt to perpetrate any felony within the purview of G.S. 14-17 is murder in the first degree, irrespective of premeditation or

deliberation or malice aforethought. *State v. Maynard,* 247 N.C. 462, 469, 101 S.E. 2d 340, 345 (1958), and cases cited.

* * *

. . . An interrelationship between the felony and the homicide is prerequisite to the application of the felony-murder doctrine. 40 C.J.S. *Homicide* § 21(b), at 870; Perkins, *op. cit.* at 35. A killing is committed in the perpetration or attempted perpetration of a felony within the purview of a felony-murder statute "when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous transaction." . . .

Defendant contends that he did not intend to rob until *after* he had killed Mr. Marshburn and that he went to the Marshburn trailer home in order to use telephone. However, the evidence pertinent to this contention, when taken in the light most favorable to the State, shows that on the night of 18 November 1974 defendant drove a stolen automobile into a ditch in the vicinity of the trailer home of deceased. There was a dwelling across the road from the place where defendant had driven the stolen automobile into a ditch. Two persons offered to obtain help for defendant but he refused their offer. Defendant did not attempt to find a telephone at the nearby dwelling. Neither did he attempt to use an available outside pay telephone located at a service station which he passed on the way to the Marshburn dwelling. Defendant had change in his pocket. Upon arrival at the Marshburn dwelling, Mr. Marshburn permitted defendant to use the telephone and gave him a drink of water. Thereafter defendant killed the deceased as hereinabove recounted because "he wouldn't do what he was told to do." He then robbed Mr. Marshburn's body, ransacked the house, took the keys to the Marshburn truck from deceased's body and prepared to leave in the Marshburn truck. At this point, Mrs. Marshburn returned and found her husband's body lying in the pool of blood. His pocketbook was lying nearby. Defendant then returned to the Marshburn home, robbed Mrs. Marshburn of her money, took other property including the keys to the Marshburn automobile and then departed in the Marshburn automobile.

All of defendant's actions during the late afternoon and night of 18 November 1974 apparently were guided and controlled by an intent to steal and rob.

In our opinion, this evidence was sufficient to permit, but not require, a jury to find that defendant killed Kirby W. Marshburn while in the perpetration of a robbery.

The trial judge correctly overruled defendant's motions for judgment as of nonsuit.

[7]  Finally defendant argues that the trial judge committed prejudicial error by expressing an opinion in violation of G.S. 1-180 which was not supported by the evidence.

In the questioned portion of the charge Judge Fountain stated that defendant contended that "he did not commit murder in the first degree, or any other unlawful homicide" and " . . . defendant contends from the evidence that you should acquit him of that [manslaughter] on the grounds of self-defense."

Defense counsel did not bring the alleged misstatement to the trial judge's attention. The trial judge's statement of defendant's contentions seems to be logically consistent with defendant's own testimony. On direct examination, defendant testified:

> . . . I stabbed him to get him away from me. I had backed up as far as I could back up and the only way I knew out of the trailer was through the door that I entered. I was afraid for my safety at that time and I now realize that I probably used more force than was necessary. . . .
>
> *     *     *
>
> . . . At that time I thought I had a reason for picking up the knife as I was looking out for myself and my safety. . . . I did think it was necessary to pick up a knife and stab him at that time.

Usually the contentions of the parties are apparent from the evidence presented at trial. When the contentions are not so apparent or counsel's contentions differ from the evidence he produced at trial, this Court does not require the trial judge to be clairvoyant. For this reason, we have consistently held that any misstatements of counsel's contentions must be brought to the trial judge's attention before the jury retires for delibera-

---

Gas House, Inc. v. Southern Bell Telephone Co.

---

tion so that he has an opportunity for correction. *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839; *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28; *State v. Goines, supra; State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477; *State v. Shumaker,* 251 N.C. 678, 111 S.E. 2d 878; *State v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876. Defendant seeks to avoid application of this rule by urging that the alleged misstatement of defendant's contentions constituted an expression of opinion.

A similar assignment of error was considered by this Court in the recent case of *State v. Griffin,* 288 N.C. 437, 219 S.E. 2d 48 (1975). In *Griffin,* the defendant, relying on an insanity defense, contended that he had admitted a shooting and it was consequently improper for the trial judge to state that defendant contended that he was not guilty of first-degree murder or any lesser included offense. We there held that the trial judge's statement of defense counsel's contentions were not improper since a plea of not guilty places the burden on the State of proving all elements of the crime charged in the indictment, including the elements of lesser included offenses. See also *State v. Lewis,* 274 N.C. 438, 164 S.E. 2d 177, and *State v. Cooper,* 256 N.C. 372, 124 S.E. 2d 91. The trial judge's statement of contention was not an expression of opinion. Further, the challenged statement appears to be favorable to defendant since it presented to the jury a possible complete defense.

Our careful examination of this record reveals that defendant was given a fair trial free from prejudicial error.

No error.

Chief Justice SHARP concurs in the result.