STATE OF NORTH CAROLINA v. GEORGE W. PHIFER; CHARLES WHARTON, ALSO KNOWN AS HILLARY BOYCE; AND JOHNNY RAY LAWRENCE

No. 11

(Filed 17 June 1976)

1. Criminal Law § 92— consolidation — propriety
     Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other.

State v. Phifer

2. **Criminal Law § 92— consolidation of cases against three defendants — no error**

Defendants' contention that their cases should not have been consolidated because some of the testimony of certain witnesses referred to defendants as a group rather than singling out particular defendants is without merit, since the record discloses that when referring to defendants as "they," the witnesses were using the term to include each of the defendants.

3. **Criminal Law §§ 48, 92— statement by one defendant — silence of other two defendants — implied admission — consolidation proper**

A statement made by one defendant in the presence of the two other defendants who remained silent was admissible against the silent defendants as an implied admission; therefore, the rule of *Bruton v. U. S.*, 391 U.S. 123, did not apply and did not require exclusion of the statement or separate trials of defendants.

4. **Jury § 7— jurors' death penalty views — questioning proper**

The trial court did not err in allowing prospective jurors to be questioned concerning their beliefs about capital punishment and to be advised that death is the penalty in first degree murder convictions.

5. **Jury § 7— juror's death penalty views — exclusion for cause**

A juror may be successfully challenged for cause when before the trial has begun he is irreparably committed to vote against the penalty of death.

6. **Jury § 7; Criminal Law § 158— jurors excluded for cause — presumption as to regularity in exclusion**

Where the record simply disclosed that 57 jurors were excluded for cause as a result of their answers to questions concerning their death penalty views, it is assumed that the trial court excused only those jurors who indicated that they could not vote for conviction which would result in imposition of the death penalty.

7. **Homicide § 20— photograph of deceased — admissibility for illustration**

Defendant was not prejudiced by the admission into evidence of a photograph of deceased showing the fatal wound since such evidence illustrated the testimony of witnesses, and the jury was instructed that the photograph was admitted for illustrative purposes only.

8. **Criminal Law § 50— opinion evidence — expertise of witness required**

The essential question in determining the admissibility of opinion evidence is whether the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies.

9. **Criminal Law § 50— opinion testimony — admissibility**

The trial court in a first degree murder prosecution did not err in allowing (1) a witness who was in charge of the mobile crime laboratory of the SBI to give an opinion as to whether or not washing

State v. Phifer

the hands would destroy any possibility of a valid gun residue test, (2) an employee of the SBI, who admittedly was not a fingerprint expert, to explain the difference between a latent lift and a fingerprint, and (3) various witnesses to make observations and statements of fact which did not amount to expressions of opinion.

**10. Searches and Seizures § 1— probable cause to stop and search vehicle**

Where an officer had been notified by the State Highway Patrol radio dispatcher that a bank robbery and shooting had taken place and that a maroon Cadillac bearing N. J. license plates had been seen outside the bank, and the officer shortly thereafter saw a car answering this description traveling away from the scene of the crime, the officer had sufficient probable cause to stop the vehicle and search it for contraband and weapons as it sat on the side of the road.

**11. Homicide § 20; Searches and Seizures § 2— consent to search vehicle — admissibility of money found therein**

The trial court in a first degree murder case did not err in allowing into evidence money seized during a search of defendant's car where the court determined that defendant gave police officers permission to search his vehicle after he had been fully advised of his *Miranda* rights.

**12. Homicide § 21— murder in perpetration of robbery — sufficiency of evidence**

Evidence was sufficient for the jury in a first degree murder case where it tended to show that all three defendants arrived at Junior Peterson's trailer shortly after 8:00 a.m. on the day of the crime, defendant Phifer asked Mary Peterson for an old stocking, defendant Lawrence was carrying a shaving kit which contained, among other items, a .32 caliber revolver, the three defendants left. the trailer about 8:55 a.m. in a maroon Cadillac bearing N. J. license plates, the car was later identified as belonging to defendant Boyce, a bank employee was shot with a .32 caliber pistol and the Southern Bank and Trust Company's Pantego branch was robbed shortly after 9:00 a.m., a dark-colored Cadillac with N. J. plates was parked at the bank at the time, the three defendants returned to the trailer at approximately 9:20 a.m. in the maroon Cadillac carrying a white plastic bag containing a large amount of money, and defendant Phifer, in the presence of the other defendants, told Mary Peterson that they had robbed a bank and "that dumb woman picked the phone up and screamed."

**13. Homicide § 30— first degree murder — failure to instruct on lesser offense — no error**

Where the evidence was sufficient to place all three defendants at the scene of the homicide, and no evidence was adduced showing that one or more of the defendants merely counseled or procured the crimes, the trial court properly denied defendants' request for an instruction on accessory before the fact.

**14. Homicide §§ 2, 25— three defendants — responsibility of all for acts of one**

In a prosecution of three defendants for first degree murder, the trial court correctly stated the rule that each defendant need not

do every act necessary to constitute the crime, but that two or more persons may act together with a common purpose to commit a crime and thereby be held responsible for the acts of the others.

**15. Criminal Law § 114— jury instructions — no expression of opinion**

The trial court did not express an opinion in violation of G.S. 1-180 by (1) reminding the jury that they should apply the law he gave them equally to all defendants, (2) relating his instructions concerning the credibility of interested witnesses and accomplices to the evidence in the case, (3) reminding the jurors of the length of the trial and the inconvenience it had caused them and expressing his appreciation to the jurors for their service, and (4) explaining to the jurors the consequences of a hung jury and encouraging them to agree on a verdict without surrendering their convictions.

**16. Criminal Law § 99— handcuffing defendants outside jury's presence — no expression of opinion**

The handcuffing of defendants while the jury was out deliberating on the verdict did not constitute an impermissible expression of opinion on the part of the trial judge or influence the jurors to the prejudice of defendants.

**17. Constitutional Law § 36; Homicide § 31— first degree murder — death penalty constitutional**

Imposition of the death penalty upon a conviction for first degree murder was constitutional.

APPEAL by defendants under G.S. 7A-27(a) from *Smith, S.J.,* at the 9 June 1975 Term of BEAUFORT Superior Court.

Defendants were charged in separate bills of indictment, proper in form, with the first degree murder of Dorothy Cuthrell. On pleas of not guilty, the cases were consolidated for trial over objection of defendants. The jury returned verdicts of guilty as charged as to each defendant. Defendants appealed from judgments imposing sentences of death.

Evidence for the State tended to show the following: About 8:00 a.m. on 24 January 1975, defendants came to the trailer home of their friends, Augustus "Junior" Peterson and Mary Holliway Peterson, located on Highway 264 in the Leachville section of Beaufort County near the Hyde County line. "Junior" was not at home, having left earlier that morning. Defendant Phifer asked Mary Peterson if she had any old stockings and was told she did not. At the time, defendant Lawrence had a blue shaving kit containing a revolver, rubber gloves, tape and some wire. Defendants left the trailer at approximately 8:55 a.m. in a maroon Cadillac, returning about 9:20 a.m. In response to a question from Mary Peterson, defendant Phifer

stated that they had robbed a bank and further said, "That dumb woman picked the phone up and screamed." Phifer then dumped the contents of a white plastic bag he had been carrying onto a bed, revealing several stacks of money with wrappers around them. Later, defendant Wharton, also known as Hillary Boyce (hereinafter called Boyce), left the trailer in the maroon Cadillac. Defendants Phifer and Lawrence left together with "Junior" Peterson and Leroy Ormond in Peterson's white Cadillac.

Dorothy Cuthrell, teller for the Southern Bank and Trust Company's Pantego branch, was found shortly after 9:00 a.m. on 24 January lying on the floor of the bank with her ankles taped together and a bullet wound in her chest. Mrs. Cuthrell later died as a result of the wound. Approximately $8,635.00 was taken from the bank. A witness who walked by the bank shortly after 9:00 a.m. observed a dark-colored Cadillac bearing New Jersey license plates parked in front of the bank.

Defendants Phifer and Lawrence were apprehended at approximately 10:30 a.m. when the car in which they were traveling was stopped by a highway patrolman. Defendant Boyce, driving the maroon Cadillac, was stopped shortly thereafter by Mr. Phillips, a License and Theft Officer of the Department of Motor Vehicles. Another officer with Phillips asked Boyce for his registration card and his driver's license, which he produced. These were made out to Hillary R. Boyce, Jersey City, New Jersey. Sergeant Ake of the State Highway Patrol arrived a few minutes later and told defendant that his car matched the description of the car seen at the scene of the crime and asked defendant to go with him to Washington "to get it straightened out." Boyce agreed to drive his car to the Beaufort County Courthouse in Washington. They left with Sergeant Ake in his car in front and S.B.I. Agent Newell in his car behind. At Plymouth, Sergeant Ake left his car and rode to Washington with Boyce. At the courthouse, Boyce consented to a search of his car. A large sum of money was found behind a cardboard panel in the trunk.

On the afternoon of 24 January 1975, a black shaving kit was found on the side of a dirt road four miles from "Junior" Peterson's trailer and beside a field farmed by Peterson. The kit contained a cassette tape, a screwdriver and other small tools, an empty plastic bag marked "Delfin" rubber gloves, and other miscellaneous items.

Defendants offered no evidence.

Other facts necessary to decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten, Senior Deputy Attorney General James F. Bullock, and Associate Attorney William H. Guy for the State.*

*Charles W. Ogletree for defendant Lawrence; Thomas E. Archie for defendant Wharton, also known as Hillary ·Boyce; and William R. Peel for defendant Phifer, appellants.*

MOORE, Justice.

[1]    Before defendants were arraigned, the State moved to consolidate the cases for trial. Defendants objected, and in the absence of the jury arguments were made on the motion. The motion was then allowed. Defendants assign this as error. The State's motion was addressed to the sound discretion of the trial judge. Consolidation of cases for trial is generally proper when the offenses charged are of the same class and are so connected in time and place that evidence at trial upon one indictment would be competent and admissible on the other. *State v. Taylor,* 289 N.C. 223, 221 S.E. 2d 359 (1976) ; *State v. King,* 287 N.C. 645, 215 S.E. 2d 540 (1975) ; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972) ; G.S. 15A-926(b)(2). The exercise of discretion by the trial judge will not be disturbed absent a showing that defendant has been denied a fair trial by the order of consolidation. *State v. Taylor, supra; State v. Jones,* 280 N.C. 322, 185 S.E. 2d 858 (1972).

[2]    Defendants first contend that their cases should not have been consolidated because some of the testimony of certain witnesses refers to defendants as a group rather than singling out particular defendants. However, an examination of the record discloses that when referring to defendants as "they," the witnesses were using the term to include each of the defendants. Hence, there was no need to point out each defendant individually. In further support of their objections to consolidation, defendants cite *Bruton v. United States,* 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968). In interpreting *Bruton,* Justice Sharp (now Chief Justice), speaking for the Court in *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492 (1968), said:

". . . [I]n joint trials of defendants it is necessary to exclude extrajudicial confessions unless all portions which

implicate defendants other than the declarant can be deleted without prejudice either to the State or the declarant. If such deletion is not possible, the State must choose between relinquishing the confession or trying the defendants separately. The foregoing pronouncement presupposes (1) that the confession is inadmissible as to the codefendant (see *State v. Bryant, supra)* [250 N.C. 113, 108 S.E. 2d 128 (1959)], and (2) that the declarant will not take the stand. If the declarant can be cross-examined, a codefendant has been accorded his right to confrontation. See *State v. Kerley, supra* at 160, 97 S.E. 2d at 879 [246 N.C. 157, 97 S.E. 2d 876 (1957)]."

[3] In instant case, witness Peterson testified without objection that when the three defendants returned around 9:20 a.m. she met them at the door of the trailer and asked defendant Phifer, "What happened?" Phifer replied that they had robbed a bank and further stated, "That dumb woman picked the phone up and screamed." Since Phifer did not take the stand, neither Lawrence nor Boyce was able to cross-examine him about his statements. However, under the circumstances in which the statement was made, we hold that it was properly admissible against defendants Boyce and Lawrence and that *Bruton* does not apply. The record reveals that the three defendants were together and were entering the trailer when Mary Peterson asked Phifer what had happened. Both Lawrence and Boyce were in a position to hear the statement and said nothing in denial. Thus, the statement by Phifer is admissible against Lawrence and Boyce as an implied admission.

The general rule concerning implied admissions was aptly stated by Justice Branch in *State v. Spaulding,* 288 N.C. 397, 219 S.E. 2d 178 (1975), as follows:

"Implied admissions are received with great caution. However, if the statement is made in a person's presence by a person having firsthand knowledge under such circumstances that a denial would be naturally expected if the statement were untrue and it is shown that he was in position to hear and understand what was said and had the opportunity to speak, then his silence or failure to deny renders the statement admissible against him as an implied admission. 2 Stansbury's N. C. Evidence, § 179, p. 50 (Brandis Rev. 1973). *State v. Moore,* 262 N.C. 431, 137 S.E. 2d 812; *State v. Guffey,* 261 N.C. 322, 134 S.E. 2d

638; *State v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186; and *State v. Wilson,* 205 N.C. 376, 171 S.E. 2d 338. . . ."

Defendants also cite *State v. Bonner,* 222 N.C. 344, 23 S.E. 2d 45 (1942), and *State v. Cotton,* 218 N.C. 577, 12 S.E. 2d 246 (1940), in support of their position that the cases should not have been consolidated. Both of these cases are factually distinguishable from the cases here. *State v. Bonner, supra,* involved a situation in which the codefendant's statement did not incriminate himself but included a full account of all the circumstances pertaining to the robbery-murder of the victim by his codefendants. *State v. Cotton, supra,* involved the testimony of a wife against her husband which, under C.S. 1802 (now G.S. 8-57), was not competent. For a discussion of these two cases as bearing upon the question of consolidation, *see State v. Jones, supra.* Absent a showing that defendants have been denied a fair trial by the order of consolidation, the cases were properly consolidated for trial. This assignment of error is overruled.

It is stipulated that fifty-seven prospective jurors were excused by the court upon challenge of the State for their answers to the following questions:

"1. 'Would it be impossible for you under any circumstances, even though the State satisfied you beyond a reasonable doubt of the defendants' guilt of the charge, would it be impossible for you no matter what the evidence was, to bring in a verdict of guilty when you knew it carried the death penalty?'

"2. 'Would it be impossible for you under any circumstances, where even though you were convinced beyond a reasonable doubt of the defendants' guilt, for you to return a verdict of guilty, where you knew the death penalty would be imposed?'"

[4]   Defendants first contend that the prospective jurors should not have been questioned concerning their beliefs about capital punishment and should not have been advised that death is the penalty in first degree murder convictions.

In *State v. Britt,* 285 N.C. 256, 267, 204 S.E. 2d 817, 825 (1974), Justice Branch, speaking for the Court, said:

"It is well established by our decisions and the decisions of the federal courts that in a capital case both the

State and the defendant may, on the voir dire examination of prospective jurors, make inquiry concerning a prospective juror's moral or religious scruples, his beliefs and attitudes toward capital punishment, to the end that both the defendant and the State may be insured a fair trial before an unbiased jury. [Citations omitted.] A prospective juror's response to such inquiry by counsel may disclose basis for a challenge for cause or the exercise of a peremptory challenge. The extent of the inquiries, of course, remains under the control and supervision of the trial judge."

*See also* G.S. 15-176.3 which expressly provides that in a capital case the court, the defense, or the State may inform any person called to serve as a potential juror that the death penalty will be imposed upon the return of a verdict of guilty of that crime.

Defendants further contend that the exclusion of these jurors because of their views on capital punishment deprived defendants of their Sixth Amendment right to a jury which reflects a fair and representative cross-section of the community, in that jurors with scruples against the imposition of the death penalty form a coherent and sizeable group in most communities from which juries are selected. Defendants cite *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), and other federal cases in support of their position.

Counsel for defendants, in their brief, state that they are not inadvertent to *State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974), and numerous similar decisions. Defendants contend, however, that these decisions are wrong and should be overruled.

[5] As stated in defendants' brief, numerous decisions of this Court have established that a juror may be successfully challenged for cause when before the trial has begun he is irreparably committed to vote against the penalty of death. *See State v. Bock*, 288 N.C. 145, 217 S.E. 2d 513 (1975); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974). *See also Whitherspoon v. Illinois, supra.* We adhere to these decisions.

[6] It is impossible to determine from the record in the case at bar why the jurors excluded for cause were in fact excluded. The record does not reveal what the answers to the stipulated

questions actually were nor does it show any systematic exclusion of prospective jurors who voiced only general objections to the death penalty. The record simply disclosed that fifty-seven jurors were excluded for cause as a result of their answers to these questions. On the record before us, we must assume that the trial judge excused only those jurors who answered the stipulated questions in the affirmative. *State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778 (1970); *State v. Dew,* 240 N.C. 595, 83 S.E. 2d 482 (1954). There is a presumption of regularity in the trial. In order to overcome that presumption, it is necessary for matters constituting material and reversible error to be made to appear in the case on appeal. *State v. Young,* 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Sanders,* 280 N.C. 67, 185 S.E. 2d 137 (1971). *Accord, State v. Hilton,* 271 N.C. 456, 156 S.E. 2d 833 (1967). An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court. *State v. Young, supra; State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968); *State v. Duncan,* 270 N.C. 241, 154 S.E. 2d 53 (1967). No such error is made to appear in this case. This assignment is overruled.

[7] By a series of assignments of error, defendants claim they were prejudiced by the introduction of improper evidence. First, defendants contend that State's Exhibit No. 1, a photograph of the deceased showing the fatal wound, added nothing to the evidence presented by the State, and was only introduced for the purpose of inflaming the jury. Defendants further contend that while Dr. West identified the photograph, he did not use it to illustrate his testimony.

The photograph was used to illustrate the testimony of the witnesses Flowers and Wise who testified concerning the position of the body of the deceased at the scene, and the location of the wound which they observed. The trial judge, when the photograph was offered into evidence, specifically instructed the jury that it was offered and received for one purpose and one purpose only, and that was to illustrate the testimony of the witness concerning what he observed if, in fact, they found that it did illustrate his testimony, and that it was not to be used for any other purpose. In his charge to the jury, the trial judge repeated and elaborated upon this instruction.

There was nothing gory or gruesome about the photograph. It simply showed a small hole in the chest area of the deceased

---

---

at the point of entry for the bullet which Dr. West testified caused her death. No objection was made to Dr. West's testimony concerning this photograph. It was competent to illustrate the testimony of Flowers and Wise. *State v. Young, supra; State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974) ; *State v. Crews*, 284 N.C. 427, 201 S.E. 2d 840 (1974) ; *State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972).

[8] Defendants next contend that the trial court erred in allowing witnesses to speculate, give unqualified opinions, and draw conclusions. Ordinarily, opinion evidence of a nonexpert witness is not admissible because it is the province of the jury to decide what inferences are warranted by the testimony. *State v. Peterson*, 225 N.C. 540, 35 S.E. 2d 645 (1945), overruled on other grounds in *State v. Hill*, 236 N.C. 704, 73 S.E. 2d 894 (1953). The essential question in determining the admissibility of opinion evidence is whether the witness, through study and experience, has acquired such skill that he is better qualified than the jury to form an opinion as to the subject matter to which his testimony applies. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973) ; *State v. Hairston and State v. Howard and State v. McIntyre*, 280 N.C. 220, 185 S.E. 2d 633 (1972) ; *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971) ; 1 Stansbury, N. C. Evidence § 133, p. 431 (Brandis Rev. 1973).

[9] Specifically, defendants contend that the witness James Bailey was allowed to give an opinion as to "whether or not washing the hands would destroy any possibility of a valid gun residue test." Mr. Bailey was in charge of the mobile crime laboratory of the State Bureau of Investigation, and because of the nature of his job and the experience which he had had, he was better qualified than the jury to form an opinion on this matter.

Mr. Louis Young, an employee of the State Bureau of Investigation, although admittedly not a fingerprint expert, was allowed to explain "the difference between a latent lift and a fingerprint." His employment and experience qualified him to make this comparison. *See State v. Crowder, supra.*

Defendants in present case did not request a finding by the trial court that either the witness Bailey or the witness Young was qualified as an expert. In the absence of such request, the finding is deemed implicit in the ruling admitting

opinion testimony. *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969).

Defendants objected to the testimony of witness Phillips that Boyce's car had stopped and was preparing to back up and go another road as being speculative or opinion testimony. This statement was a mere observation, did not involve an ultimate question to be determined by the jury, and was not prejudicial to defendants.

The contradictory testimony of the witness Mary Peterson, in identifying the caliber of the pistol which she had earlier seen in Lawrence's shaving kit, that "I'd say maybe it was a thirty-two, I know it was, you know, it was too small for a twenty-two," went only to its weight and not its admissibility.

The testimony of S.B.I. Agent Newell that he saw a hard object in a sink at Mary Peterson's home that looked as if it had been burned was not opinion evidence but simply a statement of fact. So was the testimony of Mary Peterson that she attempted to burn the plastic bag which had contained the money defendants brought to her home and that she had then put the remainder of the bag in the sink.

This series of assignments is overruled.

The next assignment of error is based upon defendant Boyce's contention that he was unlawfully taken into custody and that the purported permission to search his car was coerced. He contends, therefore, that the money found as the result of the search of his car was the fruit of an illegal search and his objection to its admission into evidence should have been sustained.

G.S. 15A-401(b)(2), in part, provides:

"Offense Out of Presence of Officer.—An officer may arrest without a warrant any person who the officer has probable cause to believe:

a. Has committed a felony. . . ."

It is not required that a felony be shown actually to have been committed. It is only necessary that the officer have reasonable ground to believe that such an offense has been committed. *State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974); *State v. Mobley,* 240 N.C. 476, 83 S.E. 2d 100 (1954); *Draper*

*v. United States*, 358 U.S. 307, 3 L.Ed. 2d 327, 79 S.Ct. 329 (1959).

> "Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. . . . [T]he evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith." 5 Am. Jur. 2d, Arrest § 44 (1962). *State v. Shore, supra; State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971).

Probable cause "may be based upon information given to the officer by another, the source of such information being reasonably reliable." *State v. Roberts,* 276 N.C. 98, 171 S.E. 2d 440 (1970). *State v. Shore, supra.*

**[10, 11]** In present case, Officer Phillips had been notified by the State Highway Patrol radio dispatcher that the bank robbery and shooting had taken place and that a maroon Cadillac bearing New Jersey license plates had been seen outside the bank. Based upon this information, when Officer Phillips shortly thereafter saw the car answering this description traveling away from the scene of the crime, he had sufficient probable cause to stop the vehicle and search it for contraband and weapons as it sat on the side of the road. *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925). Given this right to seize and search the car on the open road, Officer Phillips would also have been justified in taking the car to his headquarters and having it searched there without first obtaining a warrant. *Chambers v. Maroney,* 399 U.S. 42, 26 L.Ed. 2d 419, 90 S.Ct. 1975 (1970); *Texas v. White,* 423 U.S. 67, 46 L.Ed. 2d 209, 96 S.Ct. 304 (1975). Officer Phillips would further have been fully justified in arresting defendant Boyce under North Carolina procedures. *State v. Harrington,* 283 N.C. 527, 196 S.E. 2d 742 (1973); *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971); *State v. Harris,* 279 N.C. 307, 182 S.E. 2d 364 (1971). Boyce's car could have been involuntarily searched on the side of the road or at the Beaufort County Courthouse and Boyce himself arrested. However, in instant case defendant Boyce *voluntarily* agreed to drive his car to Washington and there, after having been fully advised of his *Miranda* rights, gave Sergeant Ake and Federal Bureau of Investigation Agent Fanning permission to search his car. The

trial court, after finding facts, concluded that the permission to search was freely, understandingly, and voluntarily given. Such search renders competent the evidence thus obtained. *State v. Frank,* 284 N.C. 137, 200 S.E. 2d 169 (1973); *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. den.,* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966); *State v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736 (1961). This assignment is without merit.

Next, defendants assign as error the failure of the trial judge to direct the jury to disregard inadmissible evidence. The alleged error pertains to two questions to which defendants objected. The first of these, relating to the contents of the shaving kit which the evidence tended to show had been discarded by defendants, was as follows:

". . . I do recall that there were several papers and a driver's license inside.

Q. All right, go ahead.

A. There was a slip, a slip of paper in there that I recall was from a radio shack in New York——."

The other question, pertaining to a piece of yellow plastic found on the Pantego bank floor on January 24, was as follows:

"Q. Would you describe it as it appears to you now, what it is?

A. It's a portion of a piece of yellow glove."

Defendants' objections to each of these questions were sustained. Assuming that the objections had been overruled, we do not see how defendants could have been prejudiced. Furthermore, defendants made no request that the judge instruct the jury to disregard these questions or answers. If defendants wanted fuller instructions as to the evidence or contentions, they should have so requested. Their failure to do so now precludes them from assigning this as error. *State v. McClain,* 282 N.C. 396, 193 S.E. 2d 113 (1972); *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487 (1970).

No reason or argument is stated or authority cited in support of the assignment alleging error in the introduction of various exhibits. Under Rule 28(b)(3) of the North Carolina Rules of Appellate Procedure, this assignment is deemed abandoned.

State v. Phifer

[12]  Defendants contend that their motions as of nonsuit should have been granted for the reason that the State failed to prove that each of the defendants was present when the fatal shooting occurred. This contention is without merit. Upon motion as of nonsuit, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. Nonsuit should be denied when there is sufficient evidence, direct, circumstantial, or both, from which the jury could find that the offense charged has been committed and that defendant committed it. *State v. Caron*, 288 N.C. 467, 219 S.E. 2d 68 (1975); *State v. Allred*, 279 N.C. 398, 183 S.E. 2d 553 (1971); *State v. Goines*, 273 N.C. 509, 160 S.E. 2d 469 (1968). In the case at bar, the uncontradicted evidence tended to show that all three defendants arrived at Junior Peterson's trailer shortly after 8:00 a.m. on 24 January 1975. Defendant Phifer asked Mary Peterson for an old stocking and defendant Lawrence was carrying a shaving kit which contained, among other items, a .32-caliber revolver. The three defendants left the trailer about 8:55 a.m. in a maroon Cadillac bearing New Jersey license plates, later identified as belonging to defendant Boyce. Mrs. Cuthrell was shot with a .32-caliber pistol and the Southern Bank and Trust Company's Pantego branch robbed shortly after 9:00 a.m. A dark-colored Cadillac with New Jersey license plates was parked at the bank at that time. The three defendants returned to the trailer at approximately 9:20 a.m. in the maroon Cadillac, carrying a white plastic bag containing a large amount of money. Defendant Phifer, in the presence of the other defendants, told Mary Peterson that they had robbed a bank and "[t]hat dumb woman picked the phone up and screamed." This evidence was sufficient to support the conclusion on the part of the jury that the three defendants were together and acting in concert at the time of the robbery and shooting. The motions for judgments as of nonsuit were properly overruled.

[13]  Defendants next argue that the trial court refused to instruct the jury that they might find one or more of the defendants guilty as accessories before the fact, contending that since the State had not shown that all three were present at the bank, the court should have instructed the jury to consider whether one or more of the defendants merely procured the robbery and murder but was not present at the commission of the crimes. It is well established that the trial court is under a duty to instruct on lesser included offenses when, and only

when, there is evidence tending to show the commission of such lesser offenses. *State v. Foster,* 284 N.C. 259, 200 S.E. 2d 782 (1973) ; *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). In instant case, the evidence was sufficient to place all three defendants at the scene of the crime; no evidence was adduced showing that one or more of the defendants merely counseled or procured the crimes. In the absence of such evidence, the request for an instruction on accessory before the fact was properly denied.

[14] By their next assignment of error, defendants contend that the trial court erred in instructing the jury on the burden of proof as to each defendant. However, an examination of the judge's charge on this issue reveals that defendants' contentions are baseless. The trial judge correctly stated the rule that each defendant need not do every act necessary to constitute the crime, but that two or more persons may act together with a common purpose to commit a crime and thereby be held responsible for the acts of the others. The trial judge then explained the elements of armed robbery and the operation of the felony murder rule. *See State v. Wright,* 282 N.C. 364, 192 S.E. 2d 818 (1972) ; *State v. Hairston and State v. Howard and State v. McIntyre, supra.* When these instructions are read as a whole, as they must be, *State v. Lee,* 277 N.C. 205, 176 S.E. 2d 765 (1970), the trial judge correctly defined the applicable law, applied this law to the facts of the case and clearly instructed the jury that the State must prove each defendant's guilt as to every element of the offense beyond a reasonable doubt, either by proving that a particular defendant committed all essential elements of the crime or "acted in concert" with another defendant who did. This assignment of error is overruled.

[15] Defendants bring forward several assignments of error concerning alleged violations of G.S. 1-180. First, defendants contend that the trial judge suggested the defendants were equally guilty by instructing that "justice requires that everyone who is charged with the same crime, be treated in the same way and have the same law applied to them." Obviously, the able trial judge was simply reminding the jury that they should apply the law he gave them equally as to all defendants. Defendants further contend the trial judge suggested that the crimes charged had undoubtedly been committed and that Mary Holliway Peterson and Leroy Ormond were accomplices or accesso-

ries to the crimes. To the contrary, the judge merely instructed the jury that "there was some evidence as I remember, and again take your recollection of the evidence, that there was some evidence *which tended to show* that the witness Mary Holliway Peterson and Leroy Ormond were accomplices or accessories in the commission of a crime charged in this case." (Emphasis added.) The trial judge here was merely relating his instructions concerning the credibility of interested witnesses and accomplices to the evidence in the case.

Defendants also argue that the trial judge expressed his opinion concerning the guilt of the defendants by reminding the jurors of the length of the trial and the inconvenience it had caused them. The judge, however, was only expressing his appreciation to the jury for their service and went on to say, "I would hope that you will take whatever time you feel is necessary until such time as you can agree on your verdict." Defendants additionally contend that the trial judge pressured the jury to continue their deliberations when they reported they could not agree. Here, the trial judge was only attempting to explain to the jurors the consequences of a hung jury. On two occasions during these final instructions, he stated: ". . . I do want to emphasize the fact that it is your duty to do whatever you can to reason the matter over together as reasonable men and women and to reconcile your differences if that is possible without the surrender of anyone's conscientious convictions." No undue pressure appears. *See State v. Accor and State v. Moore,* 281 N.C. 287, 188 S.E. 2d 332 (1972).

[16] Finally, defendants complain that they were handcuffed while the verdicts were read and the jury polled and that this "shackling" amounted to an expression of opinion by the judge on their guilt and could have influenced the jurors' verdicts. Defendants correctly acknowledge that the conduct of the trial is within the sound discretion of the trial judge, especially as regards maintaining order in the courtroom. *See State v. Rhodes,* 290 N.C. 16, 224 S.E. 2d 631 (1976) ; *State v. Spaulding, supra.* The jury was out deliberating when defendants were handcuffed. We do not see how the handcuffing of defendants in the absence of the jury constituted an impermissible expression of opinion on the part of the trial judge or influenced the jurors to the prejudice of the defendants. These assignments are overruled.

[17]  By their last assignment of error, defendants attack the death sentence as being illegal and unconstitutional for the reason that capital punishment in North Carolina is still imposed in a selective and arbitrary manner that violates the rule of *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972). These contentions have been considered and rejected by this Court in many cases in recent years. Further discussion would be merely repetitious. *See State v. Bush,* 289 N.C. 159, 221 S.E. 2d 333 (1976), and cases cited therein.

Due to the seriousness of the charges and the gravity of the punishment imposed, we have carefully examined and considered all of defendants' assignments of error. An examination of the entire record discloses that defendants have had a fair trial, free from prejudicial error. The judgments imposed must therefore be upheld.

No error.