JAMES E. CARTER v. COLONIAL LIFE AND ACCIDENT INSURANCE COMPANY

No. 8026DC679

(Filed 16 June 1981)

1. **Insurance § 50— accident insurance—accident as exclusive cause of injuries—triable issue of fact**

    In an action to recover under an accident policy for injuries to plaintiff's hip allegedly sustained when plaintiff fell from a ladder, the evidence on motion for summary judgment presented a triable issue of fact as to whether

plaintiff's accident was the independent and exclusive cause of his injuries or whether a degenerative joint disease resulting from a football injury some 40 years earlier contributed to plaintiff's injuries where plaintiff testified by affidavit that at the time of the accident he suffered immediate and severe pain; he nearly blacked out and could not walk; prior to the fall from the ladder he had experienced no pain in his hip except when he had suffered the football injury some 40 years before; prior to the fall he was active and participated in hard physical labor; and after the fall he was totally disabled for a period of approximately six months.

2. **Evidence § 14.1— deposition of attending physician—authority of trial court**
     Under G.S. 8-53 only the judge presiding at the trial on the merits may grant a motion to take depositions of the physicians who attend a party.

APPEAL by plaintiff from *Black, Judge.* Judgment entered 23 May 1980 in District Court, MECKLENBURG County. Heard in the Court of Appeals 4 February 1981.

Plaintiff alleged in his complaint that he was insured under defendant's policy numbered 1126-27485 against accidental bodily injury.

On 1 March 1978, plaintiff allegedly sustained a bodily injury when he fell from a ladder approximately ten feet to the ground. He suffered severe damage to his left hip. As a result of the fall and injury plaintiff was hospitalized and underwent surgery resulting in a total hip replacement.

It is not disputed that the policy of insurance was in force at the time the accident occurred; that plaintiff properly notified defendant of his claim for benefits under the insurance policy; and that defendant refused to pay plaintiff anything under the terms of the insurance policy. Plaintiff alleged that defendant's refusal to pay constituted a breach of its contract, and he was, therefore, entitled to recover payments for total disability, hospital fees, and physicians's fees as provided by the policy. In addition, plaintiff asked for an award of interest and attorney's fees.

Defendant's answer averred that the surgery and the concomitant medical expenses did not result exclusively from the accident as required for recovery under the terms of the coverage of its policy. With regard to coverage the policy stated:

The Company will pay the benefits named in this Section for any loss resulting directly, independently and exclusively of

all other causes from bodily injuries effected solely through external and accidental means whether such injuries occur in the course of any occupation or employment, or otherwise.

Defendant contended that a degenerative joint disease from which plaintiff had suffered since his youth when he sustained a football injury contributed to the consequences of plaintiff's fall from the ladder.

Based upon the limited coverage of its policy and its averment that defendant's fall was not the exclusive cause of the resulting surgery, defendant made a pretrial motion for summary judgment pursuant to G.S. 1A-1, Rule 56. The court reviewed the pleadings, depositions of Dr. David N. DuPuy and Dr. John L. Ranson, the affidavit of plaintiff, and heard and considered the arguments of plaintiff and defendant. The court found that there was no genuine issue of material fact and allowed defendant's motion for summary judgment, from which plaintiff appeals.

*Williams, Kratt and Parker, by Neil C. Williams, for plaintiff appellant.*

*Womble, Carlyle, Sandridge and Rice, by Allan R. Gitter and James M. Stanley, Jr., for defendant appellee.*

MORRIS, Chief Judge.

[1] Plaintiff questions the propriety of the court's granting defendant's motion for summary judgment. After examining all of the evidence in the record, we think that all of the materials presented to the court disclosed a triable issue of fact which rendered the court's order of summary judgment improper.

On being deposed by defendant, Dr. DuPuy testified as follows:

> My name is David N. DuPuy. I am a Board Certified Orthopedic Surgeon licensed to practice medicine in the State of North Carolina. I first saw Mr. Carter on April 3, 1978, when he was referred by Dr. Ranson. Mr. Carter described how he had fallen on his hip, and that it kept bothering him and he was getting worse, and that is the reason he went to see Dr. Ranson and was put in the hospital. Carter's history taken on that day revealed that he had had a long history of

problems with the left hip. His history to me was that he had "dislocated his hip while playing football back in high school," which would have been—I'm guessing, at least thirty years before this time. Carter said that he was treated with traction and that from then on, as a teenager, he had trouble with his hip.

I had x-rays taken of Mr. Carter's left hip, which showed a complete and total destruction of the left hip. There was no cartilage in the joint. The head, was not round, but was completely destroyed. This would not have possibly have occurred since the fall he described.

I do not have an absolute opinion satisfactory to myself as to the cause of the disability of Mr. Carter's left hip. The disability was definitely from his hip, and when we saw him, his hip was hurting too much to work. As to the cause of the disability the fall aggravated this, but the answer is pre-existing degenerative arthritic hip from the time he was a teenager. It is something that keeps getting worse and worse, and finally you just can't continue with it.

I do have an opinion satisfactory to myself whether the fall could or might have caused his disability exclusively and independent of any other problems that he had. My opinion is that if it were not for the pre-existing problem with the hip, the fall would not have caused the disability, but I think that the fall was the straw that broke the camel's back. The hip was degenerating all along, and it finally just made it so bad that he couldn't continue in his normal activities. If the jury should find that Mr. Carter had this fall, my opinion is that the fall was not the exclusive cause of his degenerative joint disease.

The relationship of physician-patient existed between Ed Carter and me at all times.

My opinion is the Ed Carter could have continued without having to have a total hip replacement if he had not fallen. At his age of 52, and the fact that he was active running the restaurant, he could have gone not more than 5-10 years at most, or more likely 3-5 years, but the hip would have allowed him to get around without crutches. Ed Carter was 52

when I treated him. I guess that he was 16 to 18 years old when his football injury occurred. As far as I know he had gotten along 34 to 36 years without medical attention for that problem and had never had an x-ray. He gave a history that he had not even consulted another doctor about his hip, except Dr. Ranson, after his fall.

Dr. Ranson's deposition further sustained Dr. DuPuy's.

My name is Dr. John L. Ranson. I am licensed to practice medicine in North Carolina, and specialize in internal medicine.

On March 30, 1978, I took a history from Mr. Carter. He gave the history that he had had weakness and disability from a football injury in high school when he was 17 years old. He had had difficulty and limitation of motion of the left hip and that prior to his visit on March 30, 1978, he became worse and had been using crutches. He said that he had always had a limp, that his left leg was shorter and that he had never been able to walk normally.

My opinion is that Mr. Carter has this old injury, which was the basic problem. Mr. Carter did not mention having fallen prior to March 30, 1978.

I considered Ed Carter to be my patient. I saw him for the first time on March 30, 1978, and put him in the hospital on April 3. Dr. Rich had seen Ed Carter previously in 1975 for a physical exam. According to Dr. Rich's 1975 notes Mr. Carter did have an injury to his left hip playing football in high school, walked with a limp, and had the left leg shorter than the right.

I do not have an opinion as to whether a fall from a height of ten feet onto a hard surface March 1, 1978, could or might have caused the need for a total hip replacement. I do not feel qualified to answer that question. It's just out of my field.

If the jury should find that Mr. Carter had a fall, I don't think the fall that he had could have caused that much damage, because he had the trouble before anyway. It's a chronic disease thing; it's something that could be aggravated, but it could have caused that.

Plaintiff offered his own affidavit in response to defendant's motion, in which he stated:

1. I am the Plaintiff in the above-entitled action, and I have personal knowledge of the matters herein referred to and make this Affidavit in opposition to Defendant's Motion for Summary Judgment.

2. On or about March 1, 1978, I was working on a one-story building near the intersection of Interstate Highway 85 and Little Rock Road in Mecklenburg County, North Carolina. The building under construction was to be used for my "Hickory House" Barbecue Restaurant. I had been working on the building for some time prior to March 1, 1978, lifting, sawing, carrying materials, climbing ladders, and participating generally in the construction.

3. On or about March 1, 1978, while working on the building I fell from a ladder about ten feet to the ground, landed on my hip on some building materials which were scattered on the ground; I suffered immediate and severe pain in the injuries to my left hip; and I almost blacked out. At the time of the fall, I was alone and could not stand or walk; consequently, I crawled to my truck and drove a short distance to my home, where my wife helped me into the house.

4. After the fall, I had severe and constant pain in my left hip, could not walk without crutches or assistance, and when my condition did not improve; I consulted Dr. John L. Ranson about April 1, and Dr. Ranson hospitalized me at Mercy Hospital from April 3 to April 7, 1978, for observation. Dr. Ranson summoned Dr. David N. DuPuy for an orthopedic consultation. Dr. DuPuy hospitalized me at the Orthopedic Hospital of Charlotte from May 8 to May 19, 1978, and performed a total hip replacement on me on May 10, 1978.

5. Prior to my fall from the ladder on or about March 1, 1978, I had experienced no pain in my left hip, except about forty years earlier when I had a high school football injury. Since high school, about forty years ago, my left hip had not kept me from doing anything I wanted to do and had not kept me from doing the activities of a normal, healthy person, including dancing and participating in sports. Prior to my fall, I

had always been active and performed hard, physical labor. After high school, I had not consulted any doctor or received any medical attention for my left hip, until I saw Dr. Ranson about one month after my fall.

6. For the treatment of my left hip after the fall, I incurred expenses of One Hundred Twenty Dollars ($120.00) from Dr. Ranson, Two Thousand Three Hundred Thirty-Seven Dollars and 00/100 ($2,337.00) from Dr. DuPuy, Four Hundred Sixty-Three Dollars and 60/100 ($463.60) from Mercy Hospital and Four Thousand Forty-Seven Dollars and 70/100 ($4,047.70) from the Orthopedic Hospital of Charlotte.

7. Because of my fall, I was totally disabled from March 1, 1978 until September 1, 1978.

Defendant contends that the depositions of Dr. Ranson and Dr. DuPuy are conclusive evidence as to the non-exclusivity of plaintiff's injury. He argues that plaintiff's affidavit is insufficient, as a matter of law, to refute the opinion of his doctors. As support for this theory defendant relies on *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E. 2d 753 (1965). *Gillikin* is distinguishable from the case *sub judice*. In *Gillikin* the plaintiff attempted to establish that a blow from a car door was the cause of her ruptured disc. The issue before the Supreme Court was whether the plaintiff's evidence was sufficient to show that the blow from the car door had caused this injury. Plaintiff's evidence, including that of her medical expert, failed to show any causal relationship between the condition and the accident upon which she based her suit. Therefore, the Supreme Court held that the trial court had improperly denied defendant's motion for nonsuit. Its holding was based upon the plaintiff's failure to show proximate cause. Justice Sharp, later Chief Justice, stated:

> In this record there is not a scintilla of medical evidence that plaintiff's ruptured disc might, with reasonable probability, have resulted from the accident on June 12, 1962. "If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness (expert) so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the burden of showing the causal relation, the testimony, upon objection, should not be

admitted and, if admitted, should be stricken." *Lockwood v. McCaskill,* 262 N.C. 663, 138 S.E. 2d 541, 545.

263 N.C. at 324, 139 S.E. 2d at 759.

Our courts have held that lay testimony is competent to establish the cause of either injury or death. *See Gilliken v. Burbage,* supra; *Jordan v. Glickman,* 219 N.C. 388, 14 S.E. 2d 40 (1941); *Tickle v. Insulating Co.,* 8 N.C. App. 5, 173 S.E. 2d 491, *cert. denied,* 276 N.C. 728, --- S.E. 2d --- (1970); *Batten v. Duboise,* 6 N.C. App. 445, 169 S.E. 2d 892 (1969).

In the instant case plaintiff testified by affidavit that at the time of the accident he suffered immediate and severe pain. He nearly blacked out and could not walk. Prior to the fall from the ladder he had experienced no pain in his hip except when he had suffered the football injury approximately 40 years before. Prior to the fall he was active and participated in hard physical labor. After the fall he was totally disabled for a period of approximately six months.

This evidence is sufficient to raise an issue for the trier of fact as to whether plaintiff's accident was the independent and exclusive cause of his injury. We think in this instance an issue of fact did exist.

[2] Although it is unnecessary to the determination of the outcome of this appeal, we felt it instructive to note that the procedure by which Dr. Ranson and Dr. DuPuy's depositions were taken was possibly improper.

The procedural aspects of the statutory physician-patient privilege established in G.S. 8-53, appears to be qualified. It would seem to be within the discretion of the *trial judge* alone to compel a physician called as a witness to testify for the proper administration of justice as to matters within the physician-patient relationship. *State v. Martin,* 182 N.C. 846, 109 S.E. 74 (1921); *see* 41 N.C.L. Rev. 627. In *Lockwood v. McCaskill,* 261 N.C. 754, 136 S.E. 2d 67 (1964), the Supreme Court held that under G.S. 8-53 only the judge presiding at the trial on the merits may grant a motion to take depositions of the physicians who attended a party. In that opinion, Bobbitt, J., later C.J., set out clearly and concisely the reasons for the Court's conclusion that only the trial judge

should be authorized to compel disclosure by a physician. See also *Gustafson v. Gustafson*, 272 N.C. 452, 158 S.E. 2d 619 (1968).

We are advertent to the fact that when these decisions were rendered, the proviso in G.S. 8-53 provided that "the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." Following these decisions the legislature twice amended G.S. 8-53, first in 1969, 1969 N.C. Sess. Laws Ch. 914, and again in 1977, 1977 N.C. Sess. Laws Ch. 1118. Obviously, in present form G.S. 8-53 no longer contains the phrase "the presiding judge of a superior court". However, this deletion would seem to be inconsequential to the rule of *Lockwood.* G.S. 8-53 allows the judge in his *discretion* to compel a physician to disclose information he obtained while attending his patient. The statute allows the judge to override the physician-patient privilege when he believes the proper administration of justice so requires. In order to protect the privilege from abusive treatment by those not directly involved in a case, it is important that only the trial judge, either at trial or prior to trial, be the one to order disclosure by a physician of privileged information. Only the actual trial judge is so involved in the case as to be able adequately to protect the rights of a party who asserts his privilege.

In the instant case, District Court Judge Walter H. Bennett issued the order of 30 November 1979 permitting defendant to take the depositions of Dr. Ranson and Dr. DuPuy. Judge Larry T. Black considered the evidence and granted defendant's motion for summary judgment on 23 May 1980. This procedure violated the rule of *Lockwood* in that the judge who rendered judgment in this matter and who was to preside at trial was not the one who ordered the taking of these depositions pursuant to G.S. 8-53.

Having found that the granting of defendant's motion for summary judgment was in error, the judgment of the court is reversed and the case is remanded for trial.

Reversed and remanded.

Judges VAUGHN and BECTON concur.