STATE OF NORTH CAROLINA v. ROBERT BRYAN SEXTON

No. COA01-1402

(Filed 5 November 2002)

### 1. Arson— first-degree—burning of occupied mobile home— sufficiency of evidence

The trial court did not err by refusing to dismiss for insufficient evidence charges of first-degree arson, willful and malicious damage to occupied real property through use of an incendiary device, and possession of a weapon of mass death and destruction. Defendant was involved in a confrontation with Bobby and Joe Neal on the evening prior to the fire; the next morning defendant was observed pacing in his yard and staring at Joe Neal's mobile home, periodically breathing into a plastic bag; defendant was seen running from Joe Neal's mobile home after the fire started; defendant ran into the woods when confronted by Bobby Neal; Brenda Neal heard breaking glass from the rear of the mobile home immediately before the fire began and defendant had a cut on his arm when he was arrested; two plastic fuel containers were found in defendant's home; and an SBI agent concluded that the fire was started by a plastic bottle filled with gasoline and ignited by a fabric fuse. Discrepancies in the evidence are for the jury to resolve.

### 2. Real Property— malicious damage—sufficiency of evidence

There was sufficient evidence of malice in a prosecution of malicious damage to occupied real property by use of an incendiary device in the evidence of past disagreements, confrontations and the conduct of defendant prior to the fire.

### 3. Real Property— malicious damage—instructions—malice

There was no plain error in a prosecution for malicious damage to occupied real property in the court's instruction on express and implied malice. There is nothing in N.C.G.S. § 14-49.1 or the case law to preclude a definition of malice analogous to that used in homicide, and the instruction was taken verbatim from the Pattern Jury Instruction.

### 4. Evidence— drug use—chain of circumstances

The trial court did not err in a prosecution arising from the burning of an occupied mobile home by admitting evidence of defendant's drug use on the morning of the crime where the evi-

dence served the purpose of establishing a chain of circumstances leading to the fire. Moreover, its probative value was not outweighed by the danger of unfair prejudice.

**5. Evidence— deputy fire marshal's opinion—not qualified as expert**

The trial court did not err in a prosecution arising from the burning of an occupied mobile home by allowing a deputy fire marshal who had investigated the fire but who had not been qualified as an expert to give his opinion as to the cause of the fire. Defendant did not object at trial to the qualifications of the witness as an expert and the witness was better qualified than the jury to form an opinion on the cause of the fire.

Appeal by defendant from judgments entered 28 June 2001 by Judge Richard D. Boner in Gaston County Superior Court. Heard in the Court of Appeals 22 August 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Kevin Anderson, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Jarvis John Edgerton, IV, for defendant-appellant.*

THOMAS, Judge.

Defendant, Robert Sexton, appeals convictions of willful and malicious burning of an occupied mobile home used as the dwelling house of another (first degree arson), willful and malicious damage to occupied real property by use of an incendiary device, and possession of a weapon of mass death and destruction.

Defendant contends: (1) there was insufficient evidence he committed the three crimes; (2) there was insufficient evidence of the express malice needed to prove malicious damage to occupied real property; (3) the trial court improperly instructed the jury on implied malice as it relates to the crime of malicious damage to occupied real property; (4) the trial court erroneously admitted irrelevant and prejudicial evidence of prior bad acts; and (5) the trial court improperly allowed the testimony of a layperson as an expert witness. For the reasons discussed herein, we find no error.

The State's evidence tends to show the following: On the afternoon of 4 June 2000, a homemade incendiary device caused a mobile home rented to Joe Neal to burn to the ground.

**STATE v. SEXTON**

[153 N.C. App. 641 (2002)]

The previous evening, defendant had been involved in a confrontation with Joe Neal and Joe Neal's son, Bobby Neal. The three men lived in the same mobile home park. Defendant lived behind Joe Neal. Bobby Neal and his mother, Brenda Neal, who is Joe Neal's estranged wife, lived beside Joe Neal.

The confrontation among the three men began when defendant asked Bobby Neal to leave his home. Bobby Neal responded by throwing an unopened can of beer at defendant. Defendant grabbed a baseball bat and chased Bobby Neal. The two started wrestling with Bobby Neal eventually gaining control of defendant's bat and hitting him with it. Defendant ran home, retrieved a second bat, and pursued Bobby Neal. Joe Neal then joined the fray, coming out of his mobile home with a hatchet and baseball bat and telling defendant to leave his property. The fight ended for the night.

The following morning, defendant chased Bobby Neal and threw an unopened can of beer at him. Defendant spent the remainder of the morning pacing in his yard, watching Joe Neal's mobile home, and according to the State's witnesses, breathing at different intervals into a plastic bag.

Later that morning, Brenda Neal, who was cooking breakfast in Joe Neal's mobile home, heard a crash which sounded like breaking glass. It seemed to come from near the back of the mobile home. She then saw flames. After hearing his mother calling out for help, Bobby Neal saw defendant run from behind Joe Neal's mobile home to defendant's mobile home. After Bobby Neal telephoned 911 to report the fire, he told defendant the police were coming and that defendant was going to jail. Defendant responded by running through the woods.

Officer J.J. Burrell of the Gaston County Police Department found defendant later that day walking along a nearby highway. Defendant, who had suffered a cut on his arm requiring stitches, was taken into custody. Investigators were later given permission by Hilda Seeley to search the mobile home she shared with defendant. They discovered two plastic fuel containers, one under the porch and one behind the living room couch.

John Bendure, Special Agent for the State Bureau of Investigation, testified that the fire started when a plastic bottle filled with gasoline was ignited by a fabric fuse. Eric Hendrix, deputy fire marshal for the Gaston County Fire Department, testified that

the fire began under a window in the bedroom where the plastic bottle was found.

Defendant's evidence, meanwhile, tends to show the following: Defendant was involved in a confrontation with members of the Neal family on the night of 3 June 2000, but he did not leave his own mobile home the following day until after observing Joe Neal's mobile home on fire. Upon leaving, he briefly spoke with Bobby Neal and began walking to his brother's home.

Seeley testified that defendant remained at home on the morning of the fire with the two of them first exiting the mobile home that day to investigate the blaze. She claimed the cut on defendant's arm resulted from the fight with Bobby Neal the previous night.

The jury convicted defendant of all three offenses. He was sentenced to concurrent prison terms of sixty-four to eighty-six months for the property offenses. For possession of a weapon of mass death and destruction, he received a suspended sentence of nineteen to twenty-three months, was placed on supervised probation for sixty months, and assigned to the Intensive Supervision Program for six months. His suspended sentence is set to run at the expiration of his active sentence for the other two offenses.

[1] Defendant first contends the trial court erred by denying his motion to dismiss because there was insufficient evidence he committed the crimes. We disagree.

A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis*, 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998). The test of sufficiency of the evidence is the same whether the evidence is direct, circumstantial, or both. *See State v. Cook*, 334 N.C. 564, 569, 433 S.E.2d 730, 733 (1993); *State v. Cain*, 79 N.C. App. 35, 46, 338 S.E.2d 898, 905 (1986). Circumstantial evidence may be sufficient to withstand a motion to dismiss even when the evidence does not rule out every hypothesis of innocence.

STATE v. SEXTON

[153 N.C. App. 641 (2002)]

*State v. Foreman*, 133 N.C. App. 292, 298, 515 S.E.2d 488, 493 (1999), *modified on other grounds and aff'd*, 351 N.C. 627, 527 S.E.2d 921 (2000). Contradictions or discrepancies in the evidence "are for the jury to resolve and do not warrant dismissal of a case." *State v. Jarrell*, 133 N.C. App. 264, 268, 515 S.E.2d 247, 250 (1999).

Defendant argues there was insufficient evidence he started the fire because the testimony of Bobby Neal placed him near Brenda Neal's mobile home immediately prior to the fire. According to defendant, he was not seen near Joe Neal's mobile home until after the fire was discovered. Further, defendant claims discrepancies in the evidence regarding his apparel undermine Bobby Neal's testimony placing him outside pacing in his yard and staring at Joe Neal's mobile home on the morning of the fire. He also maintains the State failed to establish there was gasoline in the containers discovered in his mobile home.

However, when viewed in the light most favorable to the State, and giving the State the benefit of all reasonable inferences, the evidence tends to show that defendant was involved in a confrontation with Bobby and Joe Neal on the evening prior to the fire. Defendant was observed the next morning pacing in his yard and staring at Joe Neal's mobile home, periodically breathing into a plastic bag. After the fire started, defendant was seen running from Joe Neal's mobile home to his own. When confronted by Bobby Neal and accused of starting the fire, defendant ran into the woods. In addition, Brenda Neal heard breaking glass from the rear of the mobile home immediately before the fire began. When defendant was apprehended by police, he was discovered to have a cut on his arm that required stitches. A subsequent search of defendant's home revealed the presence of two plastic fuel containers. The SBI agent investigating the fire concluded it was started by a plastic bottle filled with gasoline which was ignited by a fabric fuse. This evidence is sufficient to support the trial court's denial of defendant's motion to dismiss.

Furthermore, defendant's contention that the State's evidence contained discrepancies as to his exact location just prior to and immediately after the fire started, what kind of pants he was wearing that morning, and whether the fuel containers stored gasoline or kerosene, does not merit dismissal by the trial court. Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *See id.* Accordingly, we hold defendant's first contention lacks merit.

STATE v. SEXTON

[153 N.C. App. 641 (2002)]

**[2]** Defendant next contends the trial court should have dismissed the malicious damage to occupied real property charge because the evidence is insufficient to demonstrate he acted with malice toward Joe Neal. Defendant maintains the State failed to show he had "a feeling of animosity, hatred or ill will toward the owner, possessor, or the occupant" of the mobile home that was burned. *State v. Conrad*, 275 N.C. 342, 352, 168 S.E.2d 39, 46 (1969). A showing of malice is required under N.C. Gen. Stat. § 14-49.1. *See id.* Defendant concedes the State's evidence demonstrates ill will toward Bobby Neal. However, defendant contends there is little evidence of ill will toward Joe Neal. We disagree.

Malice, as with intent, is a state of mind seldom provable by direct evidence. It ordinarily is proven by circumstantial evidence from which it may be inferred. *See State v. Bostic*, 121 N.C. App. 90, 99, 465 S.E.2d 20, 25 (1995). As earlier noted, circumstantial evidence is sufficient to withstand a motion to dismiss even if the evidence does not rule out every hypothesis of innocence. *Foreman*, 133 N.C. App. at 298, 515 S.E.2d at 493. The circumstantial evidence "need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury for a determination of defendant's guilt beyond a reasonable doubt." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988).

Here, there was evidence defendant hit Joe Neal's truck repeatedly with his baseball bat while chasing Bobby Neal the night before the fire. Shortly thereafter, defendant was threatened by Joe Neal with a hatchet and a baseball bat. Defendant testified he remained on the couch throughout the night because he was concerned about what the Neal family might do. The next morning, defendant was observed pacing in his yard and staring at Joe Neal's mobile home, periodically breathing into a plastic bag. In addition, Joe Neal testified about a disagreement between defendant and him the previous month which resulted in police being called.

The evidence of past disagreements and confrontations between defendant and Joe Neal, and the conduct of defendant prior to the fire, when viewed in the light most favorable to the State, is sufficient to support a reasonable inference of malice under the circumstances. Accordingly, defendant's argument to the contrary is without merit.

**[3]** Defendant next contends the trial court committed plain error by instructing the jury on express *and* implied malice as it relates

to the offense of malicious damage to occupied real property. Defendant argues the instruction on implied malice was erroneous. We disagree.

The trial court instructed the jury on the element of malice as follows:

Malice means not only hatred, ill will, or spite, as it is ordinarily understood; to be sure, that is malice; but it also means that condition of mind which prompts a person to intentionally inflict damage without just cause, excuse, or justification.

This definition of malice was taken verbatim from the North Carolina Pattern Jury Instructions. *See* N.C.P.I., Crim. 213.20. "This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *Caudill v. Smith*, 117 N.C. App. 64, 70, 450 S.E.2d 8, 13 (1994).

Further, the courts of this State have consistently recognized three kinds of malice in our law of homicide. *See State v. Snyder*, 311 N.C. 391, 393-94, 317 S.E.2d 394, 395 (1984); *State v. Reynolds*, 307 N.C. 184, 297 S.E.2d 532 (1982). The first kind is "express hatred, ill-will or spite, sometimes called actual, express, or particular malice." *Reynolds*, 307 N.C. at 191, 297 S.E.2d at 536. The second kind of malice "arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." *Id.* The third kind of malice is " 'that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.' " *Id.* (quoting *State v. Foust*, 258 N.C. 453, 458, 128 S.E.2d 889, 893 (1962)). We find nothing in N.C. Gen. Stat. § 14-49.1 or caselaw to indicate that an analogous definition of malice should not apply to the crime of malicious damage to occupied real property. Accordingly, the trial court's instruction on implied malice—"that condition of mind which prompts a person to intentionally inflict *damage* without just cause, excuse, or justification"—was proper.

[4] Defendant next contends the trial court erred in admitting evidence of his alleged illegal drug use on the morning of the fire. Bobby Neal, Joe Neal, and Brenda Neal each testified defendant was seen pacing in his yard, staring at Joe Neal's mobile home, and inhaling intoxicants from a plastic bag, or "huffing," prior to

the fire. Defendant was also cross-examined about inhaling intoxicants. He argues that such evidence is irrelevant under N.C.R. Evid. 401, more prejudicial than probative under N.C.R. Evid. 403, and evidence of prior bad acts inadmissible under N.C.R. Evid. 404(b). We disagree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401 (2001). The Supreme Court has held "[e]vidence tending to establish the context or chain of circumstances of a crime, which incidentally establishes the commission of a prior bad act," to be relevant. *State v. Agee*, 326 N.C. 542, 547, 391 S.E.2d 171, 174 (1990). This rule is known as the "same transaction" rule, the "complete story" rule, or the "course of conduct" rule. *Id.* (citing *Crozier v. State*, 723 P.2d 42, 49 (Wyo. 1986)). Such "chain of circumstances" evidence is admissible if it forms part of the history of the event or serves to enhance the natural development of the facts. *Id.* (citations omitted). As the Court stated in *Agee*:

> "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."

*Id.* at 548, 391 S.E.2d at 174-75 (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985)).

Here, testimony regarding defendant's pacing in the yard, staring at Joe Neal's mobile home, and inhaling intoxicants from a plastic bag shortly before the mobile home was ignited established the chain of events or circumstances leading to the time of the fire. Because this context incidentally involved defendant's alleged illegal use of drugs does not make the evidence irrelevant.

Defendant argues that even if the evidence of his alleged illegal drug use was properly admitted as relevant, it nonetheless should have been excluded under Rule 404(b). We disagree.

Rule 404(b) states:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a per-

son in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident . . . .

N.C.R. Evid. 404(b) (2001). The Supreme Court has made it clear that Rule 404(b) is a

rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (emphasis in original). "Therefore, as long as evidence of other crimes, wrongs, or acts is relevant to any other fact or issue other than the defendant's propensity to commit the crime for which he is being tried, the evidence is admissible." *State v. Carillo*, 149 N.C. App. 543, 550, 562 S.E.2d 47, 51-52 (2002). In *Agee*, the Supreme Court held that evidence of other crimes, wrongs, or acts is admissible for the purpose of " 'complet[ing] the story of a crime by proving the immediate context of events near in time and place.' " *Agee*, 326 N.C. at 549, 391 S.E.2d at 175 (quoting *United States v. Currier*, 821 F.2d 52, 55 (1st. Cir. 1987)).

Here, because the evidence of defendant's alleged illegal drug use served the purpose of establishing the chain of events and circumstances leading to the fire, Rule 404(b) did not require its exclusion. *See id.*

Defendant also argues that the evidence of his alleged illegal drug use should have been excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. We again disagree.

"Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court . . . Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56 (citations omitted). A trial court will be held to have abused its discretion "only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55,

59 (1986). Having reviewed the record, we conclude the trial court did not abuse its discretion under Rule 403 in admitting the evidence of defendant's alleged "huffing," nor did it err in admitting the evidence under Rules 401 and 404(b).

**[5]** Defendant next asserts the trial court erred in allowing Eric Hendrix, the deputy fire marshal who investigated the fire, to state his opinion concerning the cause of the fire. We find no error in the trial court's decision to allow the testimony.

Defendant argues that the testimony of Hendrix should have been excluded because Hendrix was never qualified as an expert. However, defendant failed to properly preserve this issue for appeal.

In North Carolina, unless a party specifically objects to the qualifications of an expert, "a ruling permitting opinion testimony is tantamount to a finding by the trial court that the witness is qualified to state an opinion." *State v. Westall*, 116 N.C. App. 534, 542, 449 S.E.2d 24, 29 (1994). In *State v. Aguallo*, 322 N.C. 818, 370 S.E.2d 676 (1988), the Supreme Court commented on the issue as follows:

> In considering this assignment of error, we find instructive this Court's decision in *State v. Phifer*, 290 N.C. 203, 225 S.E.2d 786 (1976). There, the defendant objected to the trial judge's decision to allow into evidence the testimony of two SBI agents. One agent gave his opinion as to whether the washing of one's hands would destroy any possibility of a valid gun residue test, and a second agent explained the differences between a latent lift and a fingerprint. Neither of the agents had been formally qualified as experts. We held that because of the nature of their jobs and the experience which they had, they were better qualified than the jury to form an opinion on these matters. *Id.* at 213, 225 S.E.2d at 793. The Court further held that because the defendant never requested a finding by the trial court as to the witnesses' qualifications as experts, such finding was deemed implicit in the ruling admitting the opinion testimony. *Id.* at 213-14, 225 S.E.2d at 793.

*Id.* at 821, 370 S.E.2d at 677. Further, " '[a]n objection to a witness's qualifications as an expert in a given field or upon a particular subject is waived if it is not made in apt time upon this special ground, and a mere general objection to the content of the witness's testimony will not ordinarily suffice to preserve the matter for subsequent review.' "

**STATE v. SEXTON**

[153 N.C. App. 641 (2002)]

*Riddick*, 315 N.C. at 758, 340 S.E.2d at 60 (quoting *State v. Hunt*, 305 N.C. 238, 243, 287 S.E.2d 818, 821 (1982)).

Here, defendant did not object to the qualifications of Hendrix as an expert. Only one general objection was made to Hendrix's testimony. That objection was to a question concerning what was indicated by the discovery of a fabric extending from a container of accelerant. No additional objections were made to the State's later questions concerning Hendrix's opinion of the cause of the fire. Accordingly, defendant waived the right to challenge Hendrix's qualifications as an expert on appeal. *See Westall*, 116 N.C. App. at 543, 449 S.E.2d at 29.

As an expert, Hendrix testified that the fire was started by an incendiary device which was ignited using an open flame and placed in a bedroom of Joe Neal's mobile home. Hendrix was the deputy fire marshal assigned to the conflagration. He was a professional fire investigator whose job was to determine the cause of fires, particularly in a case where local firefighters were unable to readily ascertain its origin. His experience, the nature of his job, and his personal investigation of the fire scene show he was better qualified than the jury to form an opinion on the cause of the fire. *See* N.C.R. Evid. 702(a) (2001) ("If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion."). Accordingly, we find no error in the admission of Hendrix's expert opinion testimony. *See State v. Phifer*, 290 N.C. 203, 213, 225 S.E.2d 786, 793 (1976) (allowing admission of testimony of SBI agents regarding fingerprints and tests for gun residue).

Defendant raises three additional assignments of error in the record on appeal. Since they are not argued or supported in his brief, they are deemed abandoned. N.C.R. App. 28(b)(6) (2001).

NO ERROR.

Judges MARTIN and TYSON concur.