ANGELA WORTHY, INDIVIDUALLY, AND SHANALDA McLEAN, A MINOR CHILD, BY AND THROUGH HER GUARDIAN AD LITEM, ANGELA WORTHY, PLAINTIFFS v. THE IVY COMMUNITY CENTER, INC; CECILIA WATSON BLACKWELL, EXECUTRIX OF THE ESTATE OF GORDON L. BLACKWELL, DECEASED; TRANSOM DEVELOPMENT, INC., F/K/A REGENCY DEVELOPMENT ASSOCIATES, INC., THE IVY COMMONS LIMITED PARTNERSHIP, D/B/A IVY COMMONS APARTMENTS; THE CITY OF DURHAM; JACKIE MARROW; AND INTERSTATE MANAGEMENT CONSULTANTS, INC., DEFENDANTS

No. COA08-458

(Filed 4 August 2009)

**1. Premises Liability— injury in apartment fire—whether plaintiffs were trespassers—issue of fact**

The evidence was sufficient to raise an issue of fact regarding whether plaintiffs were trespassers in an apartment in which they suffered burns, or whether they were on the premises with the consent of management.

**2. Negligence— apartment fire—causation—expert testimony not needed**

The cause of a fire did not need to be established by expert testimony where there was eyewitness testimony. Whether the testimony was credible was for the jury and whether expert testimony might be necessary in a case relying only upon circumstantial evidence was not addressed here.

**3. Negligence— apartment fire—wiring in stove hood—summary judgment**

Plaintiff's evidence in a negligence case that wiring in a stove hood sparked an apartment fire was sufficient to survive summary judgment, despite defendants' photographic evidence and expert testimony to the contrary.

**4. Negligence— apartment fire—faulty wiring—negligent inspection by city**

A claim for negligent inspection does not constitute a nonjusticiable political question.

**5. Negligence— apartment fire—wiring in stove hood—negligent inspection by city—public duty doctrine**

The public duty doctrine does not preclude a claim against a city for negligent inspection of a building.

WORTHY v. IVY CMTY. CTR., INC.

[198 N.C. App. 513 (2009)]

Appeal by plaintiffs from order entered 12 September 2007 by Judge J.B. Allen, Jr. in Durham County Superior Court. Heard in the Court of Appeals 19 November 2008.

*Perry, Perry & Perry, P.A., by Robert T. Perry, for plaintiffs-appellants.*

*Hoof & Hughes, PLLC, by J. Bruce Hoof, for defendants-appellees.*

GEER, Judge.

Plaintiffs Shanalda McLean and her legal guardian and guardian ad litem Angela Worthy appeal from the trial court's order granting summary judgment to defendants on plaintiffs' negligence claim.[1] We agree with plaintiffs' contention that summary judgment was improper as plaintiffs' forecast of evidence raised triable issues of fact regarding Shanalda's legal status on the property and as to the cause of the fire resulting in her burns. Accordingly, we reverse.

Facts

Delwyn Powell entered into a lease to rent apartment B-6 in the Ivy Commons Apartment complex in Durham, North Carolina. He lived there with Sharon McLean and her children until he moved out in July 2004. Although Ms. McLean's sister Angela Worthy is the guardian of Ms. McLean's daughter Shanalda McLean, Shanalda regularly stayed at the apartment with her mother and her siblings.

After moving into the apartment, Ms. McLean made several complaints to Ivy Commons' manager, Jackie Marrow, about exposed wires over the stove, "naked wires" hanging from the air conditioning unit, and a faulty electrical socket in the children's room. Although Ms. Marrow said that someone would take care of the problems, they were never fixed. Concerned about the wires dangling over the stove, Ms. McLean called the fire department and the operator told her to turn off all the power in the apartment and then to push the wires back up into the hood of the stove. She did this regularly because the wires would often fall down when the hood was being wiped down or when the light or fan on the hood was turned on.

---

1. Collectively, defendants are The Ivy Community Center, Inc.; Transom Development, Inc., f/k/a Regency Development Associates, Inc.; The Ivy Commons Limited Partnership, d/b/a Ivy Commons Apartments; the City of Durham; Jackie Marrow; Interstate Management Consultants, Inc.; and Gordon L. Blackwell. Mr. Blackwell died during the proceedings and the executrix of his estate, Cecilia Watson Blackwell, was substituted in his place.

On the night of 5 September 2004, two of Ms. McLean's children, Shanalda and David Barnhill, were asleep on the living room floor after a birthday party. David got up around 2:30 a.m. and wanted to make french fries. His mother helped him put some oil in a pot and turned on the burner for him. When the oil got hot, David put some french fries in the pot. According to David, "a couple of seconds later," he looked up and saw "some sparks coming from the little hood part" over the stove. The sparks were coming from wires "looping down" from the hood. The oil in the pot ignited from the sparks, and "flames started coming out." David jumped back and yelled "[f]ire," and Ms. McLean rushed into the kitchen. She saw flames coming up from the pot and wires hanging from the hood of the stove, which she had not seen previously when she was helping David make the fries.

Ms. McLean shouted for everyone to "[g]o outside" while she tried to put out the fire. She grabbed the pot and began to take it outside, but when she got to the door, she ran into Shanalda, who was coming back into the apartment to make sure that all of the children had gotten out and spilled the hot oil on both of them. They were taken to UNC Hospital and kept overnight to treat their burns. Shanalda suffered severe burns on her face, neck, back, hand, and legs.

On 10 October 2005, plaintiffs filed a complaint against The Ivy Commons Limited Partnership and the partnership's general partners—The Ivy Community Center, Inc., Transom Development, Inc., and Gordon L. Blackwell—alleging negligence in maintaining the premises. The complaint also asserted a claim against the City of Durham for negligent inspection. Plaintiffs amended the complaint on 4 December 2006 to add a claim against Interstate Management Consultants, Inc. and its employee, Jackie Marrow, who managed Ivy Commons Apartments, alleging that they were negligent in leasing an apartment that they knew or should have known was in an unfit or uninhabitable condition.

All defendants moved for summary judgment on 31 August 2007, and, in an order entered on 12 September 2007, the trial court entered summary judgment in favor of defendants. Plaintiffs timely appealed to this Court.

## Discussion

The standard of review for an order granting summary judgment requires a determination whether (1) the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law. *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001); N.C.R. Civ. P. 56(c). The trial court may not resolve issues of fact and necessarily must deny the motion if there is a genuine issue as to any material fact. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). Further, the evidence is viewed in the light most favorable to the nonmoving party. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003).

I

**[1]** Plaintiffs and defendants vigorously dispute Ms. McLean's and Shanalda's legal status on the Ivy Commons property. Defendants contend that the mother and daughter were not legally residing in the apartment, and, therefore, they were trespassers. "[A] trespasser is one who enters another's premises without permission or other right." *Nelson v. Freeland*, 349 N.C. 615, 617, 507 S.E.2d 882, 884 (1998). If the mother and daughter were trespassers, then they would have "no basis for claiming protection [from the landowner] beyond refraining from willful injury." *Id.* at 632, 507 S.E.2d at 892. Consequently, a landowner is not liable to a trespasser for mere negligence. *Holcomb v. Colonial Assocs., L.L.C.*, 358 N.C. 501, 510, 597 S.E.2d 710, 716 (2004). In contrast, "[a] lawful visitor is one who is on the premises with the landowner's permission or by legal right." *Id.* The permission granted by a landowner may be express or implied from the circumstances. *Id.*

Defendants maintain that "[t]he material facts to McLean's, and consequently to Shanalda's, legal status in the subject Ivy Commons apartment at the time of the fire, are established by the terms of the lease." The lease agreement produced by defendants was signed only by Mr. Powell, listed Mr. Powell as the only tenant in apartment B-6, expressly prohibited any other persons from residing in the apartment without being listed, and prohibited subleasing or assignment of the lease. Based on the terms of this lease, defendants contend "neither McLean nor Shanalda were lawful residents in the subject apartment."

Plaintiffs counter that their evidence shows that Ivy Commons' management knew that Ms. McLean was living in apartment B-6, that it knew she was responsible for paying the rent, and that management

took no action to evict her, thus indicating that the management impliedly permitted her and Shanalda to reside in the apartment. In addition, in his deposition, Mr. Powell testified that he remembered signing a lease that listed Ms. McLean and Shanalda as tenants, that Ms. McLean was present when this lease was signed, and that they discussed with Ivy Commons' management the fact that Ms. McLean and her children would be living in the apartment.

Defendants contend that Mr. Powell's testimony is insufficient to survive summary judgment because plaintiffs failed to produce a copy of the " 'phantom' lease" that listed Ms. McLean and the children as tenants. We need not decide, however, whether Mr. Powell's testimony regarding the lease would be sufficient by itself to defeat summary judgment because plaintiffs submitted additional evidence of Ms. McLean's and Shanalda's lawful presence on the premises.

Samantha Lincoln, a maintenance worker at Ivy Commons, stated in an affidavit that Ivy Commons' management, including Ms. Marrow, "knew Sharon McLean and her children, including Shanalda McLean[,] were tenants at apartment B-6 of Ivy Commons Apartments[.]" Ms. Lincoln further stated that "[a]fter the fire of September 4, 2004 [sic], with knowledge of management, Sharon McLean and her children continued to live in the said unit." In addition, Manuel Rodriguez, another maintenance worker at Ivy Commons, testified in his deposition that he knew that Ms. McLean and Shanalda were living in apartment B-6 prior to the fire as he would see them when he went into the apartment to perform his maintenance duties. Further, Mr. Powell reported in his deposition that Ms. McLean delivered all the rent payments to the Ivy Commons office while he was living there.

Ms. McLean testified in her deposition about making complaints about the apartment to Ms. Marrow. In addition, after Mr. Powell moved out, she asked Ms. Marrow what she needed to do to continue living in the apartment. Ms. Marrow told her "don't worry about that" and said that Ms. McLean could stay in the apartment as long as she paid her bills. Finally, plaintiffs presented evidence from various other witnesses indicating that Ivy Commons' management knew that Ms. McLean continued to live in the apartment after the fire occurred even though Mr. Powell was no longer residing there.

This evidence is sufficient to raise an issue of fact regarding whether Ms. McLean and Shanalda were trespassers or whether they were on the premises with the consent of Ivy Commons' manage-

ment. *See McIntosh v. Carefree Carolina Communities, Inc.*, 328 N.C. 87, 399 S.E.2d 114 (1991), *rev'g per curiam for reasons stated in the dissent*, 98 N.C. App. 653, 656, 391 S.E.2d 851, 853 (1990) (reversing entry of summary judgment when even though defendant's evidence indicated that plaintiff arrived on property as licensee, plaintiff's forecast of evidence regarding defendant's conduct after his arrival gave rise to issue of fact as to whether plaintiff's status had changed to invitee). *See generally* 62 Am. Jur. 2d *Premises Liability* § 121 (2009) ("Where a plaintiff who is alleged to have been a trespasser presents evidence that would, if believed, support a finding that he or she was an implied invitee or licensee at the time he or she was injured, the plaintiff's status is a question for the jury.").

## II

**[2]** In arguing that summary judgment was proper even if defendants owed a duty to plaintiffs, defendants do not challenge plaintiffs' showing of negligence, but contend instead that the undisputed competent evidence establishes that Shanalda's injury was not caused by any negligence. According to defendants, the fire could not have resulted from any wires in the hood of the stove.

In his deposition, David described how the fire started in the kitchen on 5 September 2004. He testified that around 2:30 in the morning, he began to cook some french fries with the help of his mother. She put some oil in a pot, turned on the burner, and told David to put some french fries in the oil once it got hot. Immediately after he put some french fries in the heated oil, he looked up and saw "some sparks coming from the little hood part" over the stove. He testified that the sparks were coming from wires "looping down" from the hood. According to David, the oil in the pot ignited and "flames started coming out."

Ms. McLean corroborated this testimony in her deposition. She testified that when she started helping David make the fries, she did not see any wires hanging down. She later heard "popping" sounds, and when she went into the kitchen she saw the wires hanging down from the hood and the fire in the pot.

Defendants maintain that David's testimony is not competent evidence because he is not an expert, and causation of a fire must be established by expert testimony. Defendants cite *State v. Blakeney*, 352 N.C. 287, 531 S.E.2d 799 (2000), *cert. denied*, 531 U.S. 1117, 148 L. Ed. 2d 780, 121 S. Ct. 868 (2001), *State v. Hales*, 344 N.C. 419, 474 S.E.2d 328 (1996), and *State v. Sexton*, 153 N.C. App. 641, 571 S.E.2d

41 (2002), *aff'd in part and disc. review improvidently allowed in part*, 357 N.C. 235, 581 S.E.2d 57 (2003), for the proposition that "determination of the cause of a fire is not within the knowledge of the average person and, thus, the opinion of a lay witness on such an issue cannot be helpful to the jury."

None of these cases, however, stand for the proposition asserted by defendants. In each case, the Court held that an expert was, in fact, qualified to give an expert opinion as to whether a fire was intentionally started—they do not hold that expert testimony as to the cause of the fire was required, especially when, as here, the testifying witness was an eye witness to the fire. *See Blakeney*, 352 N.C. at 311-12, 531 S.E.2d at 817 (holding that SBI agent was qualified to give expert testimony regarding "the cause or origin determination of fires"); *Hales*, 344 N.C. at 424-25, 474 S.E.2d at 331 (concluding fire marshal was qualified to give expert testimony about whether fire was started accidentally or intentionally); *Sexton*, 153 N.C. App. at 651, 571 S.E.2d at 48 (holding that expert was qualified under N.C.R. Evid. 702 to testify regarding cause of fire in arson case).

These cases do not preclude David's testimony, who was testifying as an eye witness who asserts that he actually saw what occurred. As this Court pointed out in *Kilgo v. Wal-Mart Stores, Inc.*, 138 N.C. App. 644, 651 n.9, 531 S.E.2d 883, 889 n.9, *disc. review denied*, 353 N.C. 266, 546 S.E.2d 104 (2000), lay witnesses' opinions regarding the cause of an injury are admissible when based on the witnesses' "perceptions . . . obtained from observing the accident scene."

We have found no case in North Carolina holding that an eye witness' testimony regarding the cause of a fire is insufficient as a matter of law. Instead, traditionally, plaintiffs have confronted the argument that their claims for injuries resulting from a fire were barred by the lack of direct or eye witness testimony. A century ago, our Supreme Court rejected this contention: "The cause of the fire is not required to be shown by direct and positive proof, or by the testimony of an eye-witness. It may, as we have seen, be inferred from circumstances, and there are many facts like this one, which cannot be established in any other way." *Simmons v. John L. Roper Lumber Co.*, 174 N.C. 221, 225, 93 S.E. 736, 738 (1917). Thus, while "[t]here can be no liability [for a fire] without satisfactory proof," such proof may be "direct or circumstantial evidence, not only of the burning of the property in question but that it was the proximate result of negligence and did not result from natural or accidental causes." *Phelps v. City of Winston-Salem*, 272 N.C. 24, 31, 157 S.E.2d 719, 724 (1967).

Necessarily, direct evidence—as with an eye witness— can be sufficient proof.

Our Supreme Court observed in *Phelps*, 272 N.C. at 28, 157 S.E.2d at 722, that "[p]roof of the origin of fires usually presents a difficult, if not impossible, problem. It is extremely rare that direct evidence is available; consequently, as in this case, circumstantial evidence is the only available method in a large majority of actions, either civil or criminal." *See also Fowler-Barham Ford, Inc. v. Indiana Lumbermens Mut. Ins. Co.*, 45 N.C. App. 625, 628, 263 S.E.2d 825, 827, *disc. review denied*, 300 N.C. 372, 267 S.E.2d 675 (1980) ("Ordinarily, thére is no direct evidence of the cause of a fire, and therefore, causation must be established by circumstantial evidence."). We need not address whether expert testimony might be necessary in a case relying only upon circumstantial evidence because this case presents the "extremely rare" and out-of-the-ordinary case in which there was an eye witness. Whether this direct evidence is credible is a question for the jury.

[3] Defendants next argue that David's testimony cannot be sufficient because (1) it is contrary to the physical evidence, and (2) the testimony from defendants' expert witnesses establishes that the fire could not have started in the way David testified it occurred. " 'As a general rule, evidence which is inherently impossible or in conflict with indisputable physical facts or laws of nature is not sufficient to take the case to the jury, and in case of such inherently impossible evidence, the trial court has the duty of taking the case from the jury.' " *Jones v. Schaffer*, 252 N.C. 368, 378, 114 S.E.2d 105, 112 (1960) (quoting 88 C.J.S. *Trial* § 208(b)(5)); *accord McFetters v. McFetters*, 98 N.C. App. 187, 192, 390 S.E.2d 348, 351 ("When the physical laws of nature refute testimony as inherently impossible, no issue of fact exists, and the judge has the duty to take the case from the jury."), *disc. review denied*, 327 N.C. 140, 394 S.E.2d 177 (1990).

Defendants' argument primarily hinges on their claim that the photographs of the stove and witness testimony incontrovertibly establish that the wires in the stove's hood were not exposed, but rather were behind a sheet-metal cover. As a result, defendants assert, even if the wires did spark, the sparks would have been contained behind the cover. In making this argument, defendants rely extensively on Ms. McLean's brief testimony that two photographs of the hood, exhibits 19 and 20, accurately show the appearance of the hood immediately after the fire. Defendants then note that these photographs do not show any wires hanging down from the hood.

Notwithstanding her testimony that the exhibits accurately portrayed the hood immediately after the fire, Ms. McLean also repeatedly stated that when she entered the kitchen and saw the fire, she also saw wires hanging down from the hood emitting blue sparks. We cannot infer from her limited testimony identifying the two exhibits that she intended to indicate—contrary to her other testimony—that no hanging wires existed. It is well established that, in connection with a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party—plaintiffs, in this case. *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) ("The movant's papers are carefully scrutinized; those of the adverse party are indulgently regarded. All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party." (internal citations omitted)). We also note that Ms. McLean testified that on other occasions, she tucked the wires back up into the hood after calling the fire department, suggesting that the wires could be prevented from hanging down. We cannot hold, in light of Ms. McLean's other testimony, that the photographs and the testimony relied upon by defendants incontrovertibly establish that wires were not hanging down from the hood of the stove at the time the fire started.

Defendants next argue that two close-up photographs of the inside of the hood with a portion removed, exhibits 3 and 12,[2] show that the wires were not damaged. Defendants assert that their expert Michael Sutton gave his opinion that sparking could have occurred only if the wires "arced," and, in that event, the insulation on the wires would have been melted. That is not, however, what Mr. Sutton states in his affidavit. He neither states that any possible sparks must have resulted from arcing nor does he state that arcing would have melted the insulation. He merely states that based on his assessment of the photographs of the wires, "[t]here was no evidence of any electrical faults or damaged insulation." In any event, Mr. Sutton never examined the actual hood, fan, or wires, but rather relied only upon his viewing of the photographs. These two photographs are not sufficiently clear to require entry of summary judgment.

Finally, defendants argue that their experts establish that it is "highly improbable" that the wires emitted sparks and that it is "highly unlikely" that the sparks could have ignited the oil. Although defendants maintain that the physical evidence demonstrates that

---

2. These photographs were taken after the hood was removed from the stove and taken out of the apartment.

David's explanation of how the fire started is *improbable*, defendants do not assert that it is *impossible*. In his affidavit, moreover, Mr. Sutton states only that, "in general," sparks are an insufficient ignition source for cooking oil.

In *Carter v. Colonial Life & Accident Ins. Co.*, 52 N.C. App. 520, 278 S.E.2d 893, *disc. review denied*, 304 N.C. 193, 285 S.E.2d 96 (1981), the defendant similarly argued that its expert witnesses required entry of summary judgment when plaintiff countered the expert testimony regarding causation with only his lay affidavit about what happened. The insured, in that case, fell off of a ladder, sustaining an injury to his hip that required hip replacement surgery. *Id.* at 521, 278 S.E.2d at 893. In moving for summary judgment, the insurer submitted the depositions of two doctors stating that the cause of the insured's injury was a pre-existing condition from an old sports injury. *Id.* at 522, 278 S.E.2d at 894. In opposition to the insurer's motion, the insured submitted his own affidavit describing the fall and explaining why he believed his hip injury was due to the fall. *Id.* at 525-26, 278 S.E.2d at 895-96.

On appeal from the grant of summary judgment, the insurer maintained that summary judgment was proper, "contend[ing] that the depositions of [the two doctors] are conclusive evidence as to the non-exclusivity of [the insured]'s injury. [The insurer] argue[d] that [the insured]'s affidavit is insufficient, as a matter of law, to refute the opinion of [its] doctors." *Id.* at 526, 278 S.E.2d at 896. This Court held that the insured's affidavit was admissible to prove causation, thus raising an issue of fact precluding summary judgment. *Id.* at 527, 278 S.E.2d at 897.

Similarly here, in opposition to defendants' expert evidence, plaintiffs produced David's deposition testimony in which he stated that he saw sparks from dangling wires ignite the hot oil. Consistent with *Carter*, plaintiffs have submitted sufficient evidence of defendants' negligence to defeat the motion for summary judgment.

III

[4] The City of Durham makes two arguments separate and distinct from those made by the other defendants. Rather than disputing the sufficiency of plaintiffs' evidence regarding whether the City was negligent in its inspections, the City contends that (1) the issue is a non-justiciable controversy, and (2) the public duty doctrine precludes liability in this case.

The City first argues that the decision whether to perform inspections is committed to the absolute discretion of the City's housing authority, and thus the refusal to inspect or enforce building codes under N.C. Gen. Stat. § 160A-412 (2007) is a non-justiciable political question. The City, however, cites no cases that support its position that conduct of the City's housing agency represents a non-justiciable political question.[3] Nor have we found any.

To the contrary, our courts regularly adjudicate disputes regarding a governmental entity's duty to inspect. *See Thompson v. Waters*, 351 N.C. 462, 463-65, 526 S.E.2d 650, 651-52 (2000) (adjudicating claim for negligent inspection); *Laurel Valley Watch, Inc. v. Mountain Enters. of Wolf Ridge, LLC*, 192 N.C. App. 391, 399, 665 S.E.2d 561, 567 (2008) ("In the event that a county official refuses to investigate or enforce a county's ordinance; an action will lie in mandamus to compel the official to investigate and enforce the ordinance."); *McCoy v. Coker*, 174 N.C. App. 311, 317-18, 620 S.E.2d 691, 696 (2005) (determining whether plaintiff sufficiently pled claim for relief by alleging negligent inspection by county inspector). Indeed, this Court has specifically held that a municipality may be compelled through a writ of mandamus to comply with N.C. Gen. Stat. § 160A-412, the statute at issue here. *See Midgette v. Pate*, 94 N.C. App. 498, 504, 380 S.E.2d 572, 576 (1989) (" 'Where a duty to make a decision is imposed upon a body or officer, even though discretion is involved in the determination, mandamus will lie to compel the body or officer to make the decision, since there is no discretion involved in whether action is to be taken.' " (quoting A. Rathkopf, 3 *The Law of Zoning and Planning* § 44.03[2])).

In short, our courts have never concluded that a claim for negligent inspection constitutes a non-justiciable political question. Since the City has cited no authority that specifically supports its position, we decline to do so in this case.

---

3. In support of its contention, the City cites mainly to *Heckler v. Chaney*, 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649 (1985), and *Bacon v. Lee*, 353 N.C. 696, 549 S.E.2d 840, *cert. denied*, 533 U.S. 975, 150 L. Ed. 2d 804, 122 S. Ct. 22 (2001). These cases are inapposite as neither applies the political question doctrine to disputes regarding a municipality's negligent inspection. *See Heckler*, 470 U.S. at 838, 84 L. Ed. 2d at 728, 105 S. Ct. at 1659 (holding FDA's decision not to pursue enforcement actions requested by respondents was not subject to review under APA); *Bacon*, 353 N.C. at 716-17, 549 S.E.2d at 854 (applying political question doctrine to clemency proceedings). We cannot see in what way either *Heckler* or *Bacon*, arising out of separation of powers concerns, is relevant to this action.

**[5]** The City also argues that "the public duty doctrine entitles the City to judgment as a matter of law." The public duty doctrine "provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have no duty to protect specific individuals." *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449, 119 S. Ct. 540 (1998). In *Thompson*, 351 N.C. at 465, 526 S.E.2d at 652, however, the Supreme Court expressly refused to apply the public duty doctrine to bar claims relating to building inspections performed by municipalities, stating: "After careful review of appellate decisions on the public duty doctrine in this state and other jurisdictions, we conclude that the public duty doctrine does not bar this claim against Lee County for negligent inspection of plaintiffs' private residence."

Defendants contend that *Thompson's* holding is the result of "unfortunate phraseology." The Court's holding, however, is unambiguous: "We are now asked to extend the public duty doctrine . . . in this case against a county for the alleged negligence of its building inspector. We *decline* to do so." *Id.* at 464, 526 S.E.2d at 651 (emphasis added). Decisions of this Court confirm that the public duty doctrine does not preclude a claim against the City for negligent inspection of a building. *See Eason v. Union County*, 160 N.C. App. 388, 392, 585 S.E.2d 452, 455 (2003) ("Defendant's motion for summary judgment asserted that the public duty doctrine barred plaintiff's claim. We reiterate our Supreme Court's decision in *Thompson v. Waters* that the public duty doctrine does not bar a claim against the county for negligent inspection of a private residence."); *Kennedy v. Haywood County*, 158 N.C. App. 526, 529, 581 S.E.2d 119, 121 (2003) ("In *Thompson*, the Court held that (1) the public duty doctrine was applicable only to law enforcement officers, and (2) that it was *not* applicable to county building inspectors.").

The City nonetheless asserts that "[w]hat Justice Frye meant to say was that, because the facts of the case fit precisely into the special duty exception to the public duty doctrine, the doctrine did not apply in the *Thompson* case." This Court does not presume to tell the Supreme Court what it "meant to say," as opposed to adhering to what *Thompson* actually held. We, therefore, reverse the trial court's order entering judgment in favor of defendants.

Reversed.

Judges McGEE and BRYANT concur.